# IN RE VINCENT B.*
## (AC 22749)

Foti, Mihalakos and Hennessy, Js.

Argued September 10—officially released November 19, 2002

*Thomas F. Mitola,* for the appellant (respondent father).

*Renee Bevacqua Bollier,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,*

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Albert J. Oneto III*, for the appellee (minor child).

*Opinion*

FOTI, J. The respondent father[1] appeals from the judgment of the trial court terminating his parental rights with respect to his minor child, V. On appeal, the respondent claims (1) that the court improperly concluded that the department of children and families (department) had made reasonable efforts to reunite him with V and (2) that the evidence did not support the court's finding that termination was warranted under General Statutes § 17a-112 (j) (3) (E).[2] We agree with the respondent's first claim and reverse the judgment of the trial court.

The following facts and procedural history underlie this case. On September 29, 2000, the commissioner of the department (commissioner) filed a petition, accompanied by a request for an order of temporary custody, alleging that V, who was younger than seven years of

---

[1] The court also terminated the parental rights of the respondent mother as to the minor child, V. Because the respondent mother has not appealed from the judgment, we refer in this opinion to the respondent father as the respondent.

[2] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate, (2) that termination is in the best interest of the child, and (3) that . . . (E) the parent of a child under the age of seven years who is neglected or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families . . . ."

age, was neglected[3] in that he was being denied proper care and attention physically, educationally, emotionally or morally, and that he was being permitted to live under conditions, circumstances or associations that were injurious to his well-being.[4] The commissioner also alleged that V was uncared for in that he could not be provided in his home with the specialized care that his physical, emotional or mental condition required. The court granted the commissioner's request for an order of temporary custody and placed V in the commissioner's custody.

On November 2, 2000, the commissioner filed a petition requesting termination of the respondent's parental rights. The petition alleged that termination was warranted under § 17a-112 (j) (3) (E). On November 28, 2000, the court consolidated the petition alleging that V was neglected and uncared for with the petition requesting the termination of parental rights. The court thereafter conducted hearings on the coterminous petitions as to V as well as neglect petitions that were pending as to V's siblings. See footnote 3.

On December 14, 2001, the court adjudicated V to be neglected and uncared for. The court, in the disposi-

---

[3] The commissioner also filed similar petitions as to two of V's siblings, alleging that they were uncared for or neglected. Those two children were older than seven years of age at the time that the commissioner filed those petitions. In addition to its disposition of the coterminous petitions filed on V's behalf in this action, the court adjudicated the two other children neglected and committed them to the custody of the commissioner. The record also reflects that the court previously had terminated the respondent's parental rights in two of his other minor children in April, 1999, and in February, 2000.

[4] The commissioner's actions followed an incident wherein V sustained a double fracture to his right arm. A social worker reported the injury to the department after noticing what she believed to have been an unreasonable time lapse between when V sustained the injury and when V's mother sought medical attention on his behalf. The social worker also questioned the nature of how the injury occurred. The court found that the injury occurred in the course of V's outdoor play, rather than as a result of abuse, but that it resulted from inadequate parental supervision.

tional phase of the neglect hearing, conducted a hearing on the petition to terminate the respondent's parental rights and found, by clear and convincing evidence, that the department had made reasonable efforts to reunify V with the respondent. The court also found, by clear and convincing evidence, that the respondent either was unable or unwilling to benefit from such efforts. The court further found that termination of parental rights was in V's best interest and that termination was warranted under § 17a-112 (j) (3) (E). Accordingly, the court terminated the respondent's parental rights in V and appointed the commissioner as V's statutory parent.

We need address only the respondent's first claim,[5] which is that the department failed to undertake the reasonable efforts required by § 17a-112 (j) (1) to reunite him with V because that claim is dispositive of his appeal. We conclude that the department failed to undertake such efforts and reverse the judgment on that basis.

Section 17a-112 (j) requires, as a prerequisite to terminating a party's parental rights in his or her child, that the court find "by clear and convincing evidence . . . that the [department] has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . ." "It is axiomatic that in seeking to terminate parental rights, the commissioner must prove by clear and convincing evidence that the department made reasonable efforts to reunify the parent and child as required by [the statute]. . . . We also note that [t]he statutory criteria must be strictly complied with before termination can be accomplished. . . . On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported;

---

[5] Counsel for V joins the respondent in raising the claim.

every reasonable presumption is made in favor of the trial court's ruling and we will disturb the findings of the trial court in either the adjudication or disposition phases only if they are clearly erroneous." (Internal quotation marks omitted.) *In re Dorrell R.*, 64 Conn. App. 455, 462–64, 780 A.2d 944 (2001).

In undertaking our review, however, we also are mindful of the significant interest of which the respondent has been deprived—the right to care for and to raise his child. As the United States Supreme Court has observed, "[w]hen the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it. If the State prevails, it will have worked a unique kind of deprivation. . . . A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one." (Internal quotation marks omitted.) *Santosky* v. *Kramer*, 455 U.S. 745, 759, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

"The term reasonable efforts was recently addressed by this court: Turning to the statutory scheme encompassing the termination of the parental rights of a child committed to the department, the statute imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . [R]easonableness is an objective standard . . . and whether reasonable efforts have been proven depends on the careful consideration of the circumstances of each individual case." (Citation omitted; internal quotation

marks omitted.) *In re Ebony H.*, 68 Conn. App. 342, 349, 789 A.2d 1158 (2002).

In the present case, the court noted that the department had been "involved" with the respondent's family for approximately six years and that this involvement included visits to V's home by department workers. The court also noted that the department had made services available to the respondent during the ten months prior to its filing of the petition for temporary custody. The court also found that despite the fact that the respondent was not V's primary caretaker, "when services were available to him he . . . failed to take advantage of them to whatever extent possible." On the basis of those findings, the court concluded that the department had made "considerable efforts" to help the respondent to resolve his parenting problems.

Our review of the record reveals a significant history between the respondent and the department. The court terminated the respondent's parental rights in two of his other minor children in April, 1999, and in February, 2000. For a significant amount of time predating those terminations, the department had made services available to the respondent in an effort to achieve reunification. The record reflects, however, that beginning in April, 2000, the respondent voluntarily had entered a long-term inpatient substance abuse treatment program to treat a lengthy alcohol addiction. The respondent also successfully completed counseling for anger management and depression. During his enrollment in that program, the respondent was, for the most part, away from home. During one phase of the program, the respondent was permitted to go home only on weekends. The evidence suggests that the respondent's participation in the substance abuse program, which ended in May, 2001, was successful.

The respondent was in the treatment program when V sustained the injury that precipitated the department's

actions in this case.[6] For that reason, the respondent was not present when the injury occurred, although he left the treatment facility to be with V while the child was receiving medical care. Furthermore, the respondent was in the treatment program when the commissioner filed the petition to terminate his parental rights. Upon completing the program, the respondent attended regularly scheduled department supervised visits with V. Melody Carr, a social worker with the department, was assigned to V's case in September, 2000. At trial, she testified that at the time of her involvement, the department had decided not to offer any further services to the respondent. Carr testified that as of September, 2000, the department believed that efforts to reunify V with the respondent had been "exhausted" and, accordingly, offered the respondent the opportunity only to visit with V.

During her testimony, Carr acknowledged that the department's decision not to engage in further efforts to reunify V with the respondent was based on its prior experiences with the respondent. That experience, however, predated the respondent's participation in the treatment program. Carr also testified, however, as to her belief at the time of trial that the respondent was in a position to benefit from services offered by the department to assist him in being reunited with two of V's siblings, who also were in the commissioner's custody.[7]

The court noted the findings contained in a report authored by Nancy Randall, a psychologist who examined and evaluated the respondent, among others, to assess, in part, his capacity for rehabilitation. Randall concluded, on the basis of her evaluations in January, 2001, that the respondent had been away from home

---

[6] See footnote 4.

[7] See footnote 3.

and did not know his children's needs. Randall also noted that the respondent had always taken a "back-seat" to his wife regarding child care matters and that he was not experienced in providing primary child care services. Despite finding that the respondent appeared to be capable of learning new skills, she nonetheless concluded that he was unlikely to make significant changes in his assumption of parenting duties.

We conclude that the department's efforts to reunite the respondent and V were not reasonable under the circumstances of this case. The respondent's history of not availing himself of services as well as the department's filing of the petition to terminate his parental rights did not relieve the department of a continuing duty to make reasonable efforts. The evidence reveals that after the respondent's successful participation in a lengthy treatment program in May, 2001, he regularly visited with V. Carr testified that the respondent was consistent in visiting with V, that he acted appropriately with V at those visits and that both V and the respondent demonstrated affection for one another. The respondent voluntarily had sought and received substance abuse, anger management and depression counseling. The record shows no evidence of relapses in those areas. Randall noted in her report that the respondent intended to repair the problems in his family life and to care for his children. Furthermore, John McKeithen, a substance abuse counselor who worked with the respondent during his treatment program, testified that the respondent's participation in treatment and willingness to stay sober was motivated by a desire to "get his family back."

The aforementioned steps taken by the respondent presented the department with a window of opportunity during which reasonable efforts at reunification should have been made. Reasonable efforts to reunify the respondent with V after the respondent's completion

of the treatment program could have taken any number of forms. Although this court is not in a position to prescribe what actions the department should have taken, it suffices to say that the department should have engaged the respondent, apprised him of what steps he had to take to achieve rehabilitation and given him feedback on his progress in reaching that goal. From the evidence before us, the only request made by the department was that the respondent complete substance abuse treatment. The respondent did so. The department did not make reasonable efforts when it should have done so. In fact, the record reflects that at least as of July, 2000, the department had made no efforts at reunification at all. Although making no efforts to reunify a parent and his or her child may be reasonable in certain circumstances, it was not so in this case.

For related reasons, we likewise conclude that clear and convincing evidence does not support the court's alternate finding that the respondent was either unable or unwilling to benefit from reunification efforts. We reiterate that the respondent's positive step in participating in a treatment program demonstrated a degree of rehabilitation in itself. The evidence certainly showed that the respondent had failed to utilize services that were offered to him by the department prior to March, 2000. That failure underlies the prior termination of his parental rights in two of his other children. His failure to participate in services at that earlier time, however, as experts testified, most likely occurred because of his alcohol abuse problems. McKeithen, for example, testified that the respondent, having completed treatment and having maintained sobriety, was in a far better position to benefit from services and to care for V. As previously stated, Carr also testified that as of the time of trial, the department believed that the respondent could benefit from services to reunite him with two of

his other children who were in the department's custody.

The respondent did what the department asked of him, albeit on his own, when he completed the substance abuse treatment program, as well as programs for depression and anger management. Furthermore, the respondent expressed his desire to achieve reunification with V to both McKeithen and to Randall. The court relied on Randall's conclusion that the respondent was unlikely to be capable of providing parental needs to V in the future. We note, however, that Randall's conclusions were based on her evaluations of the respondent prior to his successful completion of the treatment program and should be viewed in that context. Despite the fact that the respondent had a history of failed attempts at reunification in regard to other children, we cannot conclude that at all times prior to the date of his termination hearing, clear and convincing evidence demonstrated that he was unable or unwilling to benefit from reasonable efforts to reunify him with V.

We note, as a final matter, that the department's views concerning both the reasonableness of the efforts it made and its views concerning the respondent's ability and willingness to benefit from such efforts appear to be shaped by its concern for the respondent's desire to reunite his family, should he have parental rights over V. Carr testified that she believed that the respondent's future plan was to reunify his family and to rely on V's mother, whose parental rights in V have been terminated, as the primary caregiver. Indeed, Carr acknowledged that the department's concern with respect to the respondent, who was not even living at home when V sustained the injury that gave rise to this action, centered around the respondent's perceived desire to reunite V and V's mother. Counsel for the department echoed that concern during argument before this court. That concern, however, does not relieve the department

of its burden of making reasonable efforts to achieve reunification by engaging the respondent and making available services aimed at instilling in him healthy parental skills. The fact that the respondent may have expressed such an ill-advised plan for V does not mean that given the benefit of department services, the respondent was unwilling or unable to formulate an appropriate plan for V in the future. The expenditure of reasonable efforts by the department should assist the respondent in attempting to do so.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the petition to terminate the respondent's parental rights.

In this opinion the other judges concurred.