# IN RE VANNA A.*
## (AC 23579)

Dranginis, DiPentima and Hennessy, Js.

Argued December 2, 2003—officially released May 18, 2004

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*David B. Rozwaski,* for the appellant (respondent mother).

*John B. Ashmeade,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Opinion*

HENNESSY, J. The respondent mother appeals from the judgment of the trial court terminating her parental rights with respect to her minor child, Vanna A.[1] On appeal, the respondent claims that the court improperly concluded that (1) she failed to achieve a sufficient degree of personal rehabilitation within the meaning of General Statutes § 17a-112 (j) (3) (B), (2) there was no ongoing parent-child relationship within the meaning of § 17a-112 (j) (3) (D) and (3) termination of her parental rights was in the best interest of the child. We disagree and affirm the judgment of the trial court.

In its memorandum of decision, filed September 9, 2002, the court found the following facts and procedural history. The child, born January 30, 1996, was the subject of a neglect petition filed May 7, 1997, by the petitioner, the commissioner of children and families (commissioner), alleging that the child had sustained injuries in a manner inconsistent with the explanation given by the respondent. The child was found to be neglected. The court entered a disposition of protective

---

[1] The respondent identified Frank M. as the child's father, but did not supply an address for him. He was served by publication and never appeared. He has not appealed in this matter. Joseph A. also was listed in the petition as a putative father. The court found that he was duly served, but he never appeared in this matter. The court terminated the parental rights of both men. Only the respondent mother has appealed, and we therefore refer to her in this opinion as the respondent.

supervision that allowed the respondent to have custody and to receive counseling for family preservation. In April, 1998, during the period of protective supervision, neglect petitions were again filed by the commissioner, alleging that the child had suffered inadequately explained physical injuries. The petitions also alleged that she suffered from malnutrition and a lack of medical attention. An order of temporary custody was granted, stemming from the neglect petitions filed in April, 1998. On February 9, 1999, following a judicial pretrial, the parties agreed to, and the court granted, the commissioner's motion to modify the disposition from protective supervision to commitment to the department of children and families (department) and placement in foster care.

On February 11, 1999, just two days later, the respondent filed a motion to revoke the commitment to the department. The respondent's progress with individual counseling was a central issue in the revocation hearing. The motion was denied on the basis of the respondent's failure to acknowledge responsibility for the injuries to the child and to the child's brother.[2] The court ordered that the respondent address the issue of her responsibility for the child's injuries in counseling sessions and extended the commitment of the child to July 23, 2000. The court further approved a permanency plan calling for unification of the respondent with her child and set forth the following expectations: The respondent was required to (1) cooperate with the department; (2) participate in individual and parenting counseling; (3) have no involvement with the criminal justice system; (4) maintain adequate housing; and (5) visit with the child and demonstrate appropriate parent-child interaction during the visits.

---

[2] The respondent was convicted of assault in the third degree on the brother, who was adjudicated as neglected in a separate proceeding and was not a subject of the termination petition at issue in this case.

On July 23, 2000, the period of commitment to the department lapsed. On November 2, 2000, the commissioner, realizing that she no longer had legal guardianship over the child, filed a neglect petition and sought an order of temporary custody. The petition alleged that the child was neglected and requested that she be committed to the department. The commissioner further alleged that the respondent had abused the child physically and failed to visit regularly while the child was in foster care. Finally, on the basis of the results of a psychological examination, the commissioner alleged that there was no parent-child attachment.

At the hearing on the order of temporary custody, the parties agreed to allow the child to remain in foster care under the custody of the department pending a full hearing on the neglect petition. In addition, the respondent also entered into a court approved agreement with the department to undertake the following specific steps to be granted custody: (1) keep appointments and cooperate with the department; (2) participate in individual and family counseling; (3) sign necessary releases; (4) maintain adequate housing; (5) have no further involvement with the criminal justice system and maintain compliance with the requirements of her probation; (6) visit with the child as permitted by the department; and (7) cooperate with the child's therapy.

On March 21, 2001, after a contested hearing, the court entered an adjudication of neglect and committed the child to the commissioner for placement in foster care until March 21, 2002. The term of the commitment was extended by the court, and on April 18, 2002, the commissioner filed a petition to terminate the respondent's parental rights. The petition alleged two grounds for termination, the respondent's failure to achieve a sufficient degree of personal rehabilitation and no ongoing parent-child relationship. At the conclusion of a

contested hearing, the court found that the commissioner had proven by clear and convincing evidence that (1) the department had made reasonable efforts to reunify the respondent and the child, (2) the respondent had failed to achieve sufficient personal rehabilitation for purposes of § 17a-112 (j) (3) (B), (3) there was no ongoing parent-child relationship for purposes of § 17a-112 (j) (3) (D) and (4) it was in the child's best interest to terminate the respondent's parental rights. This appeal followed.

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . . On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights . . . exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child. . . . In the dispositional phase of a termination of parental rights hearing, the

trial court must determine whether it is established by clear and convincing evidence that the continuation of the parents' parental rights is not in the best interests of the child. In arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in . . . § [17a-112 (k)] . . . ." (Citations omitted; internal quotation marks omitted.) *In re Sheena I.*, 63 Conn. App. 713, 719–21, 778 A.2d 997 (2001).

## I

The respondent claims that the court improperly found that the commissioner proved, by clear and convincing evidence, that the respondent had failed to achieve a sufficient degree of personal rehabilitation within the meaning of § 17a-112 (j) (3) (B).[3]

It is clear from the record that the child had been adjudicated neglected on two previous occasions. It is also clear from the record that the respondent had been provided with specific steps to facilitate the child's return to her custody. She does not argue that the requirements of the statute have been met. The respondent does argue, however, that there was no reason to believe that she could not assume a position of responsibility in the life of the child within a reasonable period of time. She contends that in determining whether a parent is restored to the position of being a caretaker does not mean taking full responsibility without some

---

[3] General Statutes § 17a-112 (j) (3) (B) provides that "the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

type of support services. The respondent claims that she engaged in services provided by therapists, that her visits with the child were consistent and that she participated in family counseling. Those actions on her part resulted in progress in the development of the necessary coping skills required to reunite her with her child. The respondent argues that in light of the progress she already had made, if given continued help, she could achieve the necessary degree of rehabilitation. Therefore, she argues that the court improperly found that she had failed to rehabilitate herself.

Although the respondent's contentions are noble, she fails to apprehend the requirements of § 17a-112 (j) (3) (B). We have stated that "[p]ersonal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . The statute requires the court to find by clear and convincing evidence that the parent's level of rehabilitation is less than that which would encourage a belief that he or she can assume a responsible position in the child's life within a reasonable time." (Citation omitted; internal quotation marks omitted.) *In re Shyliesh H.*, 56 Conn. App. 167, 173, 743 A.2d 165 (1999). The respondent contends that to avoid the requisite finding, a parent does not need to be "restored to the position of caretaker" or to "take full responsibility without some type of services." Rather, if the parent produces sufficient evidence to encourage the belief that rehabilitation is foreseeable within a reasonable time, the court cannot find by clear and convincing evidence that such rehabilitation cannot be achieved.

In this case, the court's finding that the respondent failed to achieve rehabilitation is supported by the evi-

dence. The child was born January 30, 1996, and between that date and April 18, 2002, when the petition to terminate the respondent's parental rights was filed, the child was adjudicated neglected twice. The respondent had custody of the child under protective supervision for a brief period of time. The commissioner, however, has maintained custody and guardianship for several years—the result of ninety-six hour holds, orders of temporary custody and commitment stemming from adjudications of neglect. The child has been in foster care most of her life and in the same foster home since 1998.

Since 1998, the respondent has been arrested several times and has been incarcerated on three occasions. The respondent was incarcerated as of the filing date of the petition to terminate her parental rights. She was, however, scheduled to be released a short time thereafter. When she was available to participate in such activities as therapy sessions and supervised visits with the child, the respondent did so. The court found that the respondent generally complied with the majority of specific steps set forth by the court. Nevertheless, her continued involvement with the criminal justice system evidenced her lack of insight into the importance of meeting that step toward unification with her child. We agree with the court that by her actions, the respondent elevated her desires over the child's need for her as a mother.

The respondent participated in individual counseling to address issues of self-esteem, communication and her inability to tell the truth about important matters. For example, although on one occasion she admitted having abused the child's brother, the respondent has never taken responsibility for abusing the child, herself. In addition, the respondent subsequently denied to a court-appointed psychologist and a counselor that she had abused the brother. The respondent maintains that

the children suffered their many injuries by falling or running into objects. The respondent's failure to honestly address that issue resulted in the court's conclusion that her participation in therapy would not benefit her to an extent that could result in unification with the child.[4] The respondent's continued involvement with the criminal justice system rendered her unavailable to parent her child. Other evidence demonstrated that the respondent had not progressed in her counseling and therapy to an extent that would allow for the possibility of reunification with her child. We cannot conclude that the court was clearly erroneous in finding that the respondent had failed to achieve the required degree of personal rehabilitation demanded by the statute.

## II

The respondent's second claim is that the court improperly found that there was no parent-child relationship as defined in § 17a-112 (j) (3) (D).[5] "Because the statutory grounds necessary to grant a petition for termination of parental rights are expressed in the disjunctive, the court need find only one ground to grant the petition. Thus, we may affirm the court's decision if we find that it properly concluded that any one of

---

[4] Rudolpho Rosado, a psychologist assigned by the court to conduct evaluations of the child and the respondent, testified that the respondent "never took personal responsibility for any of the accidents or injuries, always citing an extenuation." He further testified that "if there's no initial acknowledgement and then you go into therapy, then there really isn't anything that you bring to the therapist to work on that leads toward changing those factors that originally caused the original problems, and, if you can't address those factors, then—then it has the potential to sustain the same degree of risk for the children over time."

[5] General Statutes § 17a-112 (j) (3) (D) provides that "there is no ongoing parent-child relationship which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ."

the statutory circumstances existed." *In re Brea B.*, 75 Conn. App. 466, 473, 816 A.2d 707 (2003). Having concluded that the court properly found that there was clear and convincing evidence that the respondent had failed to achieve the required degree of personal rehabilitation demanded by the statute, we need not address the claim.

## III

The respondent further claims that the court improperly found, in the dispositional phase of the proceeding, that it would be in the best interest of the child to terminate the respondent's parental rights. "In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)].[6] On appeal, we will disturb the findings

[6] General Statutes § 17a-112 (k) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions,

of the trial court in both the adjudication and disposition only if they are clearly erroneous." *In re Tabitha P.,* 39 Conn. App. 353, 361–62, 664 A.2d 1168 (1995).

The court, as required, considered and addressed in writing the seven factors set forth in § 17a-112 (k). The respondent argues that the commissioner, as statutorily required, did not make reasonable efforts to reunify the child with the respondent. The respondent claims that the commissioner did not actually provide services to her, but it made referrals, which she contends, does not constitute an actual service.

In support of her argument, the respondent cites *In re Vincent B.,* 73 Conn. App. 637, 646, 809 A.2d 1119 (2002), cert. denied, 262 Conn. 934, 815 A.2d 136 (2003). *In re Vincent B.,* however, may be distinguished from the case at hand. In *In re Vincent B.,* the department determined that because the respondent father had failed to benefit from its services to achieve reunification with his two other children, he also would be unwilling, or unable, to benefit from any services aimed at reunification with the child who was the subject of the termination petition in that case.[7] Id., 642. This court noted that the respondent in *In re Vincent B.* may have failed to benefit from the department's services in the past due to a problem with alcohol. Id., 645. The respondent, however, had undergone treatment and was sober during his attempts to reunite with the child at issue, a factor that increased the possibility that he might benefit from such services. Id., 646. As such, this court

and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

[7] In *In re Vincent B.,* the respondent's parental rights as to his two other children previously had been terminated. *In re Vincent B.,* supra, 73 Conn. App. 639 n.3.

required that reasonable efforts by the department be utilized to assist the respondent to formulate an appropriate plan to achieve reunification. Id., 646–47.

In the case at hand, although many efforts were arranged for the respondent to address the effects of her abuse on her child,[8] the efforts were without benefit to the respondent because of her inability to admit to herself and to others that she had abused the child. Her denial of the abuse thwarted her achievement of positive results from the programs provided and placed the child in danger of further abuse if returned to the respondent.[9] On the basis of the facts contained in the record, we conclude that it was not clearly erroneous for the court to have found that it was in the best interest of the child to terminate the parental rights of the respondent.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] The child was found to be suffering from enuresis. The testimony revealed that enuresis is a symptom of anxiety characterized by bed-wetting during the day and nighttime hours.

