# IN RE TREVON G. ET AL.*
## (AC 29061)

McLachlan, Lavine and McDonald, Js.

Argued May 29—officially released August 19, 2008

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Trudy Condio,* for the appellant (respondent mother).

*Colleen Broderick,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Opinion*

LAVINE, J. The respondent mother appeals from the judgments of the trial court terminating her parental rights with respect to her minor children, Trevon, R and D.[1] On appeal, the respondent claims that the trial court improperly concluded (1) that she had failed to achieve a sufficient degree of personal rehabilitation, (2) that the department of children and families (department) utilized reasonable efforts to reunify her with her children and (3) that the termination of her parental rights served the best interests of her children. We affirm the judgments of the trial court.

Our decision is informed by the following facts and procedural history. On July 24, 2003, the petitioner, the commissioner of children and families, filed a neglect petition in the interest of Trevon and R. The petition

---

[1] The parental rights of the children's fathers also were terminated. The fathers have not appealed. We therefore refer in this opinion to the respondent mother as the respondent.

was filed in the wake of a violent incident that had occurred between the respondent and R's father. After the father was arrested, investigative social worker Charles Larkie learned that the department had received two prior referrals for the family that included allegations of domestic violence.

On August 18, 2003, the respondent requested that Trevon, who was eight years old at the time, be removed from her home and placed in foster care because he had threatened her with a knife and cut off pieces of her hair. The petitioner, exercising a ninety-six hour administrative hold,[2] removed Trevon from the respondent's care. On August 21, 2003, the petitioner filed a motion seeking temporary custody of Trevon. Finding that Trevon would be in immediate physical danger from his surroundings in the respondent's custody, the court granted the motion. On August 29, 2003, the order of temporary custody was sustained by agreement. The court also ordered that the respondent comply with specific steps, such as parenting classes and individual and family counseling, in the interest of regaining custody of Trevon. The department referred the respondent to several support services, including counseling, parent education, a parent aide worker and a court-ordered psychological evaluation with clinical psychologist David M. Mantell.

On November 20, 2003, the court adjudicated Trevon and R to be neglected. Trevon was living outside of the respondent's custody at the time, while R was living with the respondent. The court ordered Trevon committed to the care and custody of the petitioner and postponed the dispositional orders relating to R. On March 12, 2004, the court ordered nine months of protective supervision of R. Two months later, Trevon was

---

[2] See General Statutes § 17a-101g.

returned to the respondent's custody under an order of protective supervision.

In September, 2004, the respondent attempted suicide by ingesting a concoction of rubbing alcohol, hydrogen peroxide, Benadryl and Aleve. She was admitted to the hospital, while Trevon and R were placed in temporary foster care. On December 2, 2004, a second adjudication of neglect was entered for Trevon and R, and the court ordered them committed to the care and custody of the petitioner. The court again ordered the respondent to comply with specific steps, including refraining from criminal conduct. The department again offered the respondent support services. At this time, the department's permanency plan for the children was reunification with the respondent. The respondent complied with the department's expectations of her at the end of 2004 and in 2005. Her interactions with department social workers, however, were characterized by hostility.

On June 14, 2005, the respondent filed a motion to revoke commitment but failed to attend the hearing. As a result, the court marked off the motion. In September, 2005, the court ordered that the commitment of both children be maintained. In January, 2006, the respondent gave birth to D. In March, 2006, as the department was about to begin intensive family preservation services, the respondent was arrested at her home for receiving seven pounds of marijuana. D was removed from the respondent's care pursuant to a ninety-six hour hold.[3] The respondent was charged with six crimes, including possession of marijuana with intent to sell and risk of injury to a child. Thereafter, she was incarcerated.

The petitioner sought and obtained temporary custody of D and filed a neglect petition. On March 31,

---

[3] See footnote 2 of this opinion.

2006, the order of temporary custody was sustained. In February, 2007, D was found to be neglected and was committed to the care and custody of the petitioner. On March 10, 2007, the respondent was arrested on a charge of breach of the peace after she was accused of shoplifting at the Trumbull Mall. She was incarcerated until March 21, 2007. On April 4, 2007, she was arrested again on charges relating to an assault she allegedly committed at the shopping mall at Buckland Hills in Manchester.

On June 5 and 6, 2007, a trial on the termination of the respondent's parental rights was held. At trial, Mantell testified that on the basis of his assessment of the respondent's life over the course of the time he had known her, she had a poor prognosis for achieving rehabilitation. According to Mantell, "there had been certain outstanding facts and, in fact, a downward spiral in her life so that she became homeless, became dependent on others for income and support because she had none of her own, was arrested for a serious charge and so she had a criminal violation for which she was convicted and incarcerated. And instead of her life improving once [the department] became involved and the Juvenile Court became involved and the children were removed from her care, her life deteriorated even further, including the loss of custody of another child that she had become pregnant with and given birth to during the time that I knew her."

The court found that the petitioner had proven by clear and convincing evidence that the respondent's three children had been found neglected or uncared for in a prior proceeding and that the respondent had failed to achieve such a degree of personal rehabilitation as would encourage the belief that she could assume a responsible position in the lives of the children within a reasonable time. Concluding that the termination of

the respondent's parental rights would serve the children's best interests, the court granted the termination petitions on July 2, 2007. The respondent now appeals.

We initially set forth the applicable law and our standard of review. General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon hearing and notice as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b . . . (2) termination is in the best interest of the child and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . . On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a

conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo. Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed. . . .

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Citations omitted; internal quotation marks omitted.) *In re Anthony H.*, 104 Conn. App. 744, 755–56, 936 A.2d 638 (2007), cert. denied, 285 Conn. 920, 943 A.2d 1100 (2008).

I

The respondent first claims that the court improperly found that she had failed to achieve the degree of rehabilitation required to avoid a termination of parental

rights. In light of the fact that she complied with court-ordered treatment programs during 2004 and 2005, the respondent challenges the court's finding that she failed, by clear and convincing evidence, to achieve rehabilitation sufficiently. We are not persuaded.

"Personal rehabilitation . . . refers to the restoration of a parent to his or her former constructive and useful role as a parent [and] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . The statute does not require [a parent] to prove precisely when she will be able to assume a responsible position in her child's life. Nor does it require her to prove that she will be able to assume full responsibility for her child, unaided by available support systems. It requires the court to find, by clear and convincing evidence, that the level of rehabilitation she has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life." (Internal quotation marks omitted.) Id., 757.

"The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . . Clear and convincing proof is a demanding standard denot[ing] a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that

they are false or do not exist." (Internal quotation marks omitted.) Id., 756.

In this case, the court concluded that the respondent had failed to achieve the required degree of rehabilitation despite the many support services she was afforded over a period of at least four years. The court stated: "[The respondent] has been offered a multitude of programs and services which have not generated any significant benefit. She was offered and completed Hockanum Valley parent education. She had individual counseling in 2005, but following the birth of D, [she] appeared to be still angry and said she did not find counseling useful. [The respondent] was to begin intensive family reunification, but the services were aborted when [she] engaged in criminal activities that led to her arrest and incarceration. She has had numerous complete psychological evaluations. She had a substance abuse evaluation. She has been offered other services . . . which she has declined."

In support of her claim, the respondent insists that because she complied with certain of the court's orders in 2004 and 2005, the court should not have found that she had failed to achieve such a degree of rehabilitation as would encourage the belief that she could assume a responsible position in the lives of the children. She claims that her rehabilitation was sufficient because she "was making progress in treatment. During 2004–2005, [she] was being compliant, meeting all of the department's expectations. She enrolled the children in therapy to deal with the effects of her suicide attempt. She was set to begin an intensive reunification program; however, she was arrested and sent to jail before the program got started."

Regardless of what occurred during 2004 and 2005, we believe that the court properly concluded that the

respondent had failed to achieve such a degree of rehabilitation as would encourage the belief that she could assume a responsible position in the lives of her children. The court based its conclusion on several factual findings, such as the respondent's lack of employment, lack of income, lack of housing, refusal of anger management services, history of arrests and incarcerations and dependence on others for support. These findings are supported by the record. Additionally, Mantell opined that the respondent was a poor prospect for rehabilitation.

This court recently rejected a claim that a respondent's substantial compliance with rehabilitative programs bars a court's termination of her parental rights. In *In re Coby C.*, 107 Conn. App. 395, 406, 945 A.2d 529 (2008), we stated, "Whether the respondent's shortcomings are deemed substantial compliance or noncompliance, the evidence in the record as a whole supports the court's conclusion that the respondent has failed to achieve rehabilitation pursuant to § 17a-112 and that it is not foreseeable that she is capable of rehabilitation within a reasonable time." Similarly, the record here supports the court's determination that the respondent, despite her compliance with certain court-ordered steps, had not achieved a degree of rehabilitation that would allow her to assume a responsible position in her children's lives. "[T]he critical issue [in assessing rehabilitation] is . . . whether the parent has . . . gained the ability to care for the particular needs of the child at issue." (Internal quotation marks omitted.) *In re Shyliesh H.*, 56 Conn. App. 167, 743 A.2d 165 (1999).

We conclude that on the basis of the evidence before it, the court properly found that the petitioner had established, by clear and convincing evidence, that the respondent had failed to achieve sufficient personal rehabilitation as would encourage the belief that within a reasonable time and considering the age and needs

of her children, she could assume a responsible position in their lives.

## II

The respondent's second claim is that the court improperly found that the department made reasonable efforts to reunify her with her children as required by § 17a-112 (j). More particularly, the respondent argues that the department's reunification efforts were inadequate because they did not include mental health diagnoses, treatment goals or specific therapeutic recommendations. We do not agree.

"In order to grant a petition for termination of parental rights, § 17a-112 (j) makes clear that the court must make a finding based on clear and convincing evidence that the department made reasonable efforts at reunification or, in the alternative, make a finding that the parent is unwilling or unable to benefit from reunification efforts." (Internal quotation marks omitted.) *In re Jermaine S.*, 86 Conn. App. 819, 837, 863 A.2d 720, cert. denied, 273 Conn. 938, 875 A.2d 43 (2005). "[T]he statute imposes on the department the duty . . . to make reasonable efforts to reunite the child or children with the parents. The word *reasonable* is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word *reasonable* nor the word *efforts* is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous." (Citation omitted; emphasis added; internal quotation marks omitted.) *In re Daniel C.*, 63 Conn. App. 339, 361, 776 A.2d 487 (2001).

In support of her theory that the department failed to make reasonable efforts to reunify her family, the respondent cites *In re Vincent B.*, 73 Conn. App. 637, 646, 809 A.2d 1119 (2002), cert. denied, 262 Conn. 934, 815 A.2d 136 (2003). In that case, this court overturned the termination of a father's parental rights because the department had made no effort at reunification. Id., 645–47. Conversely, the department in the present case made repeated efforts at reunification. For example, the department returned Trevon and R to the respondent's custody in April, 2004. The department continued to provide the respondent support services even after the children were removed from her custody in the wake of her suicide attempt. In 2005, the department encouraged the respondent to participate in a "Delta-T" program designed specifically for family reunification. To facilitate this, "the department offered unsupervised visits with the children so to transition [them] back into the home. As recommended by [the respondent's] therapist, it was done one child at a time to ease the burden of [the respondent's] stress of having all the children at once." The department was working toward unifying the family when the respondent was arrested on narcotics charges in March, 2006.

On the basis of the foregoing, we uphold the court's finding that the department employed reasonable efforts to reunify the respondent with her children as required by § 17a-112 (j). The court properly found that the petitioner had proved, by clear and convincing evidence, that the department had made reasonable efforts to reunite the respondent with her children.

### III

The respondent's final claim is that the court's finding that it was in the best interests of her children to terminate her parental rights was clearly erroneous because

her children were strongly bonded to her and wanted to reunify with her. We do not agree.

The following additional facts are relevant to the respondent's claim. At the time of the judgment, twelve year old Trevon had been in foster care for almost four years, five year old R had been in foster care for three years and one year old D had been in foster care for more than nine months. The court took into account the fact that Trevon harbored hopes of reunification with the respondent but noted that "the respondent continually fails to get her life stabilized and appropriately ordered. She is not even fully successful at caring for her own personal needs." The court heard Mantell's testimony that Trevon felt a strong desire to remain with his foster father if he could not be placed with the respondent and that D and the respondent had not spent enough time together to form a strong bond. In Mantell's opinion, although R would experience a significant hardship if she were not to see the respondent at all, this hardship could be overcome in time. Department social worker Mayra Sanchez testified that the foster parents of all three children had expressed a willingness to adopt them.

"[Once] the court finds that the petitioner has proven by clear and convincing evidence that one of the statutory grounds for termination of parental rights exists, it must then determine whether termination is in the best interests of the child. . . . The best interests of the child include the child's interests in sustained growth, development, well-being and continuity and stability of its environment. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is

mandated to consider and make written findings delineated in [§ 17a-112 (k)]." (Citations omitted; internal quotation marks omitted.) *In re Anthony H.*, supra, 104 Conn. App. 763–64.

We conclude that the court, in granting the petitions to terminate the respondent's parental rights, properly made its written findings in consideration of the factors delineated in § 17a-112 (k).[4] The seven statutorily required findings included in the court's memorandum of decision are supported by substantial evidence. The court explained its decision as follows. "The children are now in appropriate foster care settings where they are very well cared for by foster parents who are fully committed to them. They are safe. They are not exposed to the criminal elements. They have stable housing, regular meals, nurturance and protection. In finding that termination of [the respondent's] parental rights would be in the children's best interests, the court has examined multiple relevant factors, including the children's interests in sustained growth, development, well-being and continuity of their environment; their length of stay in foster care; the nature of their relationship

---

[4] General Statutes § 17a-112 (k) provides in relevant part: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered . . . (2) whether the [d]epartment . . . has made reasonable efforts to reunite the family . . . (3) the terms of any applicable court order entered into . . . and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents . . . and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future . . . and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child . . . or by the economic circumstances of the parent."

with foster parents and biological parents; the degree of contact maintained with their biological parents; and their genetic bond to [the respondent].

"The court has also balanced the children's intrinsic need for stability and permanency against the potential benefit of maintaining a connection with [the respondent]. . . . Under such scrutiny, the clear and convincing evidence in this matter establishes that termination of [the respondent's] parental rights is in the children's best interests. The court also notes that counsel for the children recommends termination." (Citation omitted.)

The respondent argues that her parental rights should not have been terminated because her children remained bonded to her and wanted to reunify with her. Because the existence of emotional ties between the respondent and her children fails to undermine the court's decision, this argument is unavailing. "[O]ur courts consistently have held that even when there is a finding of a bond between parent and a child, it still may be in the child's best interest to terminate parental rights." (Internal quotation marks added.) *In re Ryan R.*, 102 Conn. App. 608, 627, 926 A.2d 690, cert. denied, 284 Conn. 923, 924, 933 A.2d 724 (2007). The court in this case acknowledged the existence of bonds between the respondent and her children but also noted that the respondent had failed to stabilize her life and that the children had formed healthy emotional ties to their foster parents.

Contrary to the respondent's argument, the record supports the court's determination that the respondent failed to secure a stable living environment for her children. Over a period of at least four years, the respondent maintained neither stable housing, nor a continuous income, nor secure living conditions. She was arrested three times and incarcerated twice. "Virtually

all experts, from many different professional disciplines, agree that children need and benefit from continuous, stable home environments." (Internal quotation marks omitted.) *In re Jeisean M.*, 270 Conn. 382, 401, 852 A.2d 643 (2004). The importance of stability in children's lives, coupled with the court's amply supported finding that the respondent failed to achieve a sufficient degree of personal rehabilitation, leads us to conclude that the court properly determined, by clear and convincing evidence, that it was in the children's best interests to terminate the respondent's parental rights.

The judgments are affirmed.

In this opinion the other judges concurred.