# IN RE CHEILA R.*
## (AC 29151)

Gruendel, Lavine and West, Js.

Argued December 3, 2008—officially released February 10, 2009

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*David V. DeRosa,* for the appellant (respondent mother).

*Tammy Nguyen-O'Dowd,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Susanne D. McNamara,* for the minor child.

*Opinion*

LAVINE, J. The respondent mother, Melissa R., appeals from the judgment of the trial court terminating her parental rights with respect to her daughter after concluding that she had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child pursuant to General Statutes § 17a-112 (j) (3) (B) (i).[1] On appeal, the respondent claims that there was an insufficient basis for the court to find by clear and convincing evidence that she had failed to achieve a sufficient degree of rehabilitation.[2] We affirm the judgment of the trial court.

In its memorandum of decision, the court found the following relevant facts. The respondent was born in May, 1988, and was in the fourth month of her second pregnancy[3] before she knew that she was carrying the

[1] The court also terminated the parental rights of the child's father, who has not appealed from that judgment. We therefore refer in this opinion to the respondent mother as the respondent.

[2] The child, through counsel, has adopted the brief of the petitioner, the commissioner of children and families.

[3] The mother's first pregnancy occurred when she was fifteen and ended in a miscarriage.

child, who was born in July, 2005. The respondent had been impregnated by the live-in boyfriend of the child's maternal grandmother. He was born in 1978. As of the date of the termination of her parental rights, the respondent had not yet completed high school.

On September 13, 2005, the department of children and families (department) invoked a ninety-six hour hold on behalf of the child. See General Statutes § 17a-101g. On September 16, 2005, the petitioner, the commissioner of children and families, filed a neglect petition, alleging that the child was being permitted to live under conditions, circumstances or associations that were injurious to her well-being. On February 23, 2007, the petitioner filed a petition to terminate the respondent's parental rights, alleging that the respondent was unable or unwilling to benefit from reunification efforts, that the child had been found in a prior proceeding to have been neglected and that the respondent had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child.

Following a hearing, the court found that the respondent has unresolved mental health issues that negatively affect her ability to provide appropriate care for the child, as well as unresolved sexual victimization issues. On September 13, 2005, the respondent was overwhelmed and depressed and indicated that she did not want to be a parent to the child. The court found that the respondent had demonstrated poor judgment by failing to address her mental health issues and had compromised the safety and well-being of the child. Despite intervention, assessment and assistance offered by the department, the respondent had failed to act appropriately and continued to put her interests before those of the child.

The court found that the child had been adjudicated neglected and was committed to the care and custody of the petitioner. The respondent was informed by employees of the department on more than one occasion that to facilitate reunification with the child, she needed to enhance her parenting skills, secure adequate income and housing and participate in individual counseling. The court ordered specific steps for the respondent on July 20, 2006. The respondent failed to comply with steps requiring her to keep the department and the child's attorney informed of the child's whereabouts, participate in individual and parent counseling, make progress toward identified treatment goals, secure and maintain adequate housing and legal income and visit the child as often as the department permitted.

In September, 2005, the respondent, then a minor herself, was offered a place in a department licensed foster home because she was homeless. The child was to be placed with the respondent in the foster home. The respondent accepted the placement but failed to comply with the curfew, skipped school and left the foster home to return to the home of the maternal grandmother without permission of department personnel.

On June 5, 2006, the respondent was placed at St. Agnes Maternity Group Home (St. Agnes) to facilitate reunification with the child. While at St. Agnes, the respondent was provided with numerous services, including but not limited to parenting education, individual therapy, life skills, health education and housing. The respondent was eligible to remain at St. Agnes for up to two years and to participate in a transitional living program. On July 20, 2006, the respondent entered into a service agreement with the department to ensure the child's safety. In the event that the respondent did not fulfill her part of the agreement, her placement at St. Agnes would be in jeopardy. On August 8, 2006, the

child was placed at St. Agnes with the respondent. On August 10, 2006, and again on September 1, 2006, the respondent requested that the child be returned to foster care to allow the respondent to have an off-site overnight visit with her boyfriend. The department employees denied the respondent's request, explaining that the respondent needed to bond with the child.

On August 28 and September 29, 2006, the respondent violated the service agreement by accepting an automobile ride from the maternal grandmother. The respondent demonstrated poor judgment in that the maternal grandmother's motor vehicle had been "totaled" in an accident and had not been repaired. Moreover, when the child was transported in the vehicle, she did not have the benefit of a child safety seat. Between June 5 and September 29, 2006, the respondent failed to abide by the St. Agnes curfew, even after she was reunited with the child. On September 29, 2006, the respondent informed employees of the department that she did not want to remain at St. Agnes and asked that the child be placed in foster care. On that date, the respondent was discharged from St. Agnes. She moved in with her boyfriend, who refused the department's request that he submit to a substance abuse evaluation. The respondent was permitted to visit the child, but she visited with the child on only eleven out of twenty opportunities and has not seen the child since January 13, 2007.

On January 17, 2007, the respondent was devastated by her boyfriend's decision to leave her and move to Texas. The respondent was referred for individual therapy to help her manage her emotions, but the respondent went to Puerto Rico on January 19, 2007, without letting department employees know how to communicate with her. On February 16, 2007, the respondent informed department employees that she had returned to Connecticut and was residing with the maternal grandmother. She did not, however, ask to visit with

the child. On more than one occasion, the respondent stated that she was willing to consent to the termination of her parental rights. The court found by clear and convincing evidence that the respondent had failed to achieve a sufficient degree of rehabilitation.

At the time of the termination hearing, the child was a relatively healthy and happy two year old, who was developmentally on target. She had spent most of her life in foster care. After being with the respondent at St. Agnes, the child was returned to her initial foster home where she has remained since September 29, 2006. Her foster parents, with whom the child has a strong bond, have indicated a willingness to adopt her.

With respect to the disposition factors set out in § 17-112 (k), the court found by clear and convincing evidence that the employees of the department had made reasonable efforts to reunify the child with the respondent, that services were offered in a timely and appropriate manner, and that the respondent was unable or unwilling to benefit from reasonable reunification efforts. See General Statutes § 17a-112 (j) (1); see also the federal Adoption Assistance and Child Welfare Act of 1980, as amended by 42 U.S.C. § 670 et seq. The court found by clear and convincing evidence that the respondent failed to comply with court-ordered steps and that she had not made realistic and sustained efforts to conform her conduct to minimally acceptable parenting standards. The respondent failed to cooperate with department and service providers to whom she was referred. Moreover, the respondent failed to make the lifestyle changes necessary to indicate that she would be a safe, responsible and nurturing parent. The child exhibits limited bonding with the respondent due to the respondent's inability or reluctance to accept her role as the child's parent. To permit the child to return to the respondent's care would compromise the child's

safety. Neither the department nor a third party prevented the respondent from maintaining a relationship with the child, and economic circumstances did not prevent a relationship between the respondent and the child from developing, although the limitations and restrictions inherent to foster care were in effect.

The court also found that it was in the best interest of the child to terminate the respondent's parental rights. The child has thrived in her foster home, where she originally had been placed in September 2005. To remove her from the foster parents who have nurtured her and want to adopt her could be detrimental to the child's development. Although the respondent loves the child and wants reunification, the court found that the respondent is not capable of making crucial decisions concerning the child's needs for basic care despite the fact that she has completed parenting classes. When she attended parenting classes, the respondent was unable mentally to process and to apply information. By clear and convincing evidence, the court found that the respondent's performance demonstrated that she lacked the attributes and characteristics necessary to fill a valid parental role. She was recalcitrant concerning referrals and was uncommitted to individual and parenting counseling and to complying with the laws of the state. The child has a pressing need for permanence and stability that cannot wait for the considerable amount of time the respondent needs to address her issues, to undertake the counseling she needs and to establish herself in the community. The court found that the respondent's conduct clearly and convincingly shows that it is unlikely that she will ever be able to conform her behavior to appropriate norms or to be able to serve as a safe, nurturing and responsible parent for the child. The court concluded, after balancing the child's individual and intrinsic needs for stability and permanency against the benefit of remaining in the respondent's

life, that the child's best interest cannot be served by continuing to maintain any legal relationship with the respondent.

General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the [d]epartment of [c]hildren and [f]amilies has made reasonable efforts to locate the parent and to reunify the child with the parent . . . (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court . . . to have been neglected or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . . On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In applying the clearly erroneous standard to the findings of the trial court, we keep constantly in mind that our function is not to decide factual issues de novo. Our authority when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed. . . .

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Trevon G.*, 109 Conn. App. 782, 787–88, 952 A.2d 1280 (2008).

"Personal rehabilitation . . . refers to the restoration of a parent to his or her former constructive and useful role as a parent [and] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . The statute does not require [a parent] to prove precisely when she will be able to assume a responsible position in her child's life. Nor does it

require her to prove that she will be able to assume full responsibility for her child, unaided by available support systems. It requires the court to find, by clear and convincing evidence, that the level of rehabilitation she has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life." (Internal quotation marks omitted.) Id., 789. "[T]he failure to comply with specific steps ordered by the court typically weighs heavily in a termination proceeding." *In re Devon B.*, 264 Conn. 572, 584, 825 A.2d 127 (2003).

On appeal, the respondent claims that the court improperly found that she placed her needs ahead of those of the child because the department and St. Agnes interpreted the court-ordered specific steps in a manner that placed unreasonable demands on her. As a result of those demands, the respondent claims, she was overwhelmed, which caused her to make poor decisions and appear to have abdicated her parental responsibility.[4] We disagree that there was insufficient evidence to support the court's findings by clear and convincing evidence that the respondent failed to achieve sufficient rehabilitation and that it is in the best interest of the child to terminate the respondent's parental rights. The respondent's claim demonstrates a lack of understanding of what it takes to be a parent. To be a protective, nurturing parent, one must be able meet the needs of one's child, which are paramount, regardless of the needs of the parent. See General Statutes § 117a-112 (j) (3) (B) (i); *In re Alejandro L.*, 91 Conn. App. 248, 259–60,

[4] The respondent contends that the specific steps ordered by the court were too onerous for a teenage mother to follow. The respondent, however, signed the standard specific steps form, JD-JM-106 Rev. 5-99. She never asked that the specific steps be modified to accommodate her situation. Moreover, the respondent did not raise this claim in the trial court, and the court made no findings in that regard. We decline to afford it review. See *In re Jeffrey C.*, 261 Conn. 189, 197 n.5, 802 A.2d 772 (2002).

881 A.2d 450 (2005) (critical issue is not whether parent has improved ability to manage own life but whether parent has gained ability to care for needs of child). The record demonstrates that the respondent, seventeen at the time she gave birth, has not come to terms with her need for mental health treatment and education, in addition to gaining employment, housing and parenting skills that any parent must possess to protect and nurture a child.

The judgment is affirmed.

In this opinion the other judges concurred.