# IN RE TREMAINE C.*
## (AC 30020)

Beach, Robinson and Schaller, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued June 2—officially released October 13, 2009

*David B. Rozwaski*, for the appellant (respondent mother).

*Michael J. LaMonica*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman* and *Renee Bevacqua Bollier*, assistant attorneys general, for the appellee (petitioner).

*John Anthony Radziunas*, for the minor child.

*Opinion*

ROBINSON, J. The respondent mother appeals from the judgment of the trial court rendered in favor of the petitioner, the commissioner of children and families, terminating her parental rights with respect to her minor son, Tremaine.[1] The respondent claims that the court improperly found that (1) she had failed to achieve

---

[1] Tremaine's father also was named and served as a respondent when the petitioner instituted termination proceedings, and his parental rights were terminated as part of the same proceeding. This appeal concerns only the respondent mother. The father filed a separate appeal from the termination of his parental rights. See *In re Tremaine C.*, 117 Conn. App. 521, 980 A.2d 317 (2009). We therefore refer in this opinion to the respondent mother as the respondent.

a sufficient degree of personal rehabilitation and (2) it would be in the best interest of the child to terminate her parental rights. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. Tremaine was born in June, 2006, and is the seventh of eight children born to the respondent. He tested positive for cocaine at birth.[2] The court found that at the time of Tremaine's birth, the respondent had substance abuse issues, unstable housing and inadequate income. Additionally, his father was incarcerated at that time. Tremaine has never been in the care of the respondent, as he was placed in foster care shortly after his birth. The respondent was evicted from her apartment in January, 2007, and was believed to be living with various friends between January and September, 2007.

Prior to Tremaine's birth, the petitioner offered the respondent a placement in an inpatient substance abuse treatment center to which she could bring her two youngest children and where she could keep Tremaine with her after his birth, but she refused this placement.[3] She was given repeated referrals to a series of inpatient programs between May, 2006, and May, 2007, and in January, 2007, it was determined that she needed "intensive outpatient treatment, but [she] did not follow through with [this] recommendation."[4] The respondent was given weekly visitations with Tremaine but attended only approximately five scheduled visits from

---

[2] The court found that the respondent had ingested five bags of crack cocaine the day before giving birth to Tremaine.

[3] The court found that she refused the placement because her oldest son was about to be released from prison and she wanted to be home when he was released.

[4] She also was given a referral by the petitioner to an in-home service provider in July, 2006, and was discharged from this program for noncompliance as well.

June, 2006, through November, 2006, and, as a result, in April, 2007, her visits were reduced to biweekly.[5]

In September, 2007, when Tremaine was approximately fifteen months old, the respondent entered an inpatient substance abuse treatment center and remained there until she was discharged from the program due to behavioral problems in November, 2007.[6] Soon after, she was hospitalized due to complications with her eighth pregnancy. She was discharged from the hospital after giving birth to the child (newborn) in January, 2008, and she and the newborn entered another inpatient substance abuse center, Amethyst House, from which she was discharged at the end of January, 2008, due to further behavioral problems. She has been residing with a cousin at an undetermined address since that time.

The petition for termination of parental rights (petition) was filed on June 22, 2007.[7] The petitioner alleged, with respect to both parents, that (1) Tremaine had been abandoned, (2) he had been adjudicated neglected in a prior proceeding and both parents had failed to achieve sufficient personal rehabilitation, and (3) both

---

[5] The respondent attended approximately ten visits over an eight month period.

[6] The court noted that the respondent's "difficulty in residential treatment is an inability to abide by program rules and to live conflict free with others." Kelly Rogers, who conducted a court-ordered psychological evaluation of the respondent, noted that she "has developed a unique system of perspectives and rules for conduct, and she has little interest in that of others. Social rules, conventions and even laws likely have little meaning for her. . . . This is not an individual with good impulse control. . . . She appears unlikely to benefit from these instances, and will tend to repeat the cycle. Escape from responsibility and other social pressures seems to motivate much of her action, and this likely plays a strong role in her drug use."

[7] Tremaine was adjudicated neglected on October 5, 2006, and was committed to the care and custody of the petitioner. The respondent was defaulted for nonappearance as to this neglect petition. On May 1, 2007, the Superior Court for juvenile matters approved a permanency plan of termination of parental rights and adoption.

parents had no ongoing parent-child relationship with Tremaine.

The termination of parental rights trial began on November 7, 2007, and on May 19, 2008, the court issued its memorandum of decision granting the termination as to both parents. The court found that the petitioner had made reasonable efforts (1) to locate both parents and (2) to reunify Tremaine with both parents, and that neither parent was willing or able to benefit from reunification efforts. The court further found that a failure to achieve personal rehabilitation on behalf of both parents had been proven, that per se abandonment had been proven and that it was in Tremaine's best interest to terminate the parental rights of both parents. This appeal followed.

The respondent claims that the court improperly terminated her parental rights. Specifically, she argues that the court improperly found that (1) she had failed to achieve personal rehabilitation and (2) it would be in the child's best interest to terminate her parental rights. We address each argument in turn.

We initially set forth the applicable law and our standard of review. "A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under General Statutes § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Coby C.*, 107 Conn. App. 395, 401, 945 A.2d 529 (2008). "In order to terminate a parent's parental rights under § 17a-112, the petitioner is required to prove, by clear

and convincing evidence, that: (1) the department [of children and families (department)] has made reasonable efforts to reunify the family; General Statutes § 17a-112 (j) (1); (2) termination is in the best interest of the child; General Statutes § 17a-112 (j) (2); and (3) there exists any one of the seven grounds for termination delineated in § 17a-112 (j) (3)." (Internal quotation marks omitted.) *In re Melody L.*, 290 Conn. 131, 148–49, 962 A.2d 81 (2009).[8]

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

---

[8] General Statutes § 17a-112 (j) (3) provides in relevant part: "(A) the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . (D) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child; (E) the parent of a child under the age of seven years who is neglected or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families . . . ."

On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported." (Internal quotation marks omitted.) *In re Cheila R.*, 112 Conn. App. 582, 589, 963 A.2d 1014 (2009). "In doing so, however, [g]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Melody L.*, supra, 290 Conn. 148.

"A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *In re Janazia S.*, 112 Conn. App. 69, 81, 961 A.2d 1036 (2009).

I

The respondent's first claim is that the court improperly found in the adjudicatory phase of the trial that she had failed to achieve personal rehabilitation. She claims that she made clear and ongoing efforts to stabilize and to rehabilitate her life and has indicated a clear desire to continue working toward regaining custody of Tremaine. Because the record clearly supports the court's finding, there is no error.

"Section 17a-112 (c) (3) (B) [now (j) (3) (B)] requires the court to determine whether the degree of personal rehabilitation . . . encourage[s] the belief that within a reasonable time . . . such parent could assume a responsible position in the life of the child . . . . Personal rehabilitation refers to the reasonable foreseeability of the restoration of a parent to his or her former constructive and useful role as a parent, not merely the ability to manage his or her own life." (Internal quotation marks omitted.) *In re Stanley D.,* 61 Conn. App. 224, 230, 763 A.2d 83 (2000). "In conducting this inquiry, the trial court must analyze the respondent's rehabilitative status as it relates to the needs of the particular child . . . . The trial court must also determine whether the prospects for rehabilitation can be realized within a reasonable time given the age and needs of the child." (Internal quotation marks omitted.) *In re Galen F.,* 54 Conn. App. 590, 594, 737 A.2d 499 (1999); see also *In re Melody L.,* supra, 290 Conn. 148 ("[a] trial court's finding that a parent has failed to achieve sufficient rehabilitation will not be overturned unless it is clearly erroneous" [internal quotation marks omitted]).

"Rehabilitation does not require the parent to be able to assume full responsibility for a child without the use of available support programs. . . . An inquiry regarding personal rehabilitation requires us to obtain a historical perspective of the respondent's child-caring and parenting abilities." (Citations omitted; internal quotation marks omitted.) *In re Stanley D.,* supra, 61 Conn. App. 230–31.

In its memorandum of decision, the court stated: "Whether [the respondent] can sustain sobriety while living back in the community and not in a residential setting is still unknown. . . . [The respondent] was within weeks of being deemed successful in [the Amethyst House] inpatient treatment program, [but] [e]ven

with the imminency of being able to return to the community, [the respondent] could not conform her behavior to avoid being unfavorabl[y] discharged from Amethyst House. [The respondent] has still not attained stable housing and continues to live transiently. [She] has no gainful employment or sufficient income. Whether [she] can appropriately care for her newborn is yet to be determined. Tremaine has never been in [the respondent's] care."

Additionally, although the court noted that the respondent's discharges from the two inpatient treatment programs were not because of substance abuse and that she had not tested positive for drug use since July, 2007, the court still concluded that "[g]iven [the respondent's] unstable housing, lack of gainful employment and the fact [that she] is already caring for her eighth child under marginal circumstances, it would not be in Tremaine's best interest to have him wait any further to see if [the respondent] could assume a responsible position in Tremaine's life. A failure to rehabilitate has been proven."

The respondent argues that because her "main issue" of substance abuse was being dealt with successfully and because she had been caring for her newborn child for six months, she clearly demonstrated that she had been making efforts to achieve personal rehabilitation, and the court improperly found that she would not be able to assume responsibility for Tremaine at some point in the future. The court did acknowledge that the respondent had not tested positive for drug use in nearly ten months prior to the issuing of its memorandum of decision; however, the respondent's substance abuse was but one of a myriad of obstacles that she faced in providing a suitable home for Tremaine.

Lakesha Smith, a social worker employed by the department, testified that at the time the trial began,

in November, 2007, the respondent had been residing at the Women's Retreat, an inpatient substance abuse facility, since September, 2007, and that she was having some difficulty getting along with the staff there, had had "frequent blowups" and was not getting up on time to attend morning meetings there. Lauralee Candelario, a substance abuse counselor at Amethyst House, testified that on the basis of the respondent's prior verbal and physical altercations with her peers, she was asked to enter into a treatment contract stating that she would not continue to involve herself in further altercations or she would risk being discharged. According to Candelario, the respondent agreed to the terms of the contract on January 18, 2008, but refused to sign it; she violated its terms only a few days later and was discharged as a result.[9] Smith also testified that the respondent had not been employed since 2001 and that the longest period during which she had remained employed was approximately three months.

The court found that in the two and one-half years since Tremaine's birth, the respondent had yet to establish a stable residence for herself, nor did she have gainful employment or a sufficient income with which to support Tremaine. She was dismissed repeatedly from treatment programs because of her inability to conform her behavior. In addition, as the respondent was already caring for a newborn, the court expressed concern about whether she could care for both the newborn and Tremaine. Furthermore, as she had only been caring for the newborn for a few short months, this failed to establish the degree of rehabilitation on the respondent's part necessary to prove that she could provide adequate care for Tremaine. Upon reviewing the decision of the court and the evidence contained

---

[9] Candelario additionally testified that the respondent also violated the rules related to smoking.

in the record, we conclude that the court's findings are not clearly erroneous and are legally correct.

## II

The respondent next claims that during the dispositional phase of the trial, the court improperly found that the termination of her parental rights was in the best interest of Tremaine. We disagree.

"In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]." (Internal quotation marks omitted.) *In re Joseph L.*, 105 Conn. App. 515, 529, 939 A.2d 16, cert. denied, 287 Conn. 902, 947 A.2d 341, 342 (2008). "[Once] the court finds that the petitioner has proven by clear and convincing evidence that one of the statutory grounds for termination of parental rights exists, it must then determine whether termination is in the best interests of the child. . . . The best interests of the child include the child's interests in sustained growth, development, well-being and continuity and stability of its environment." (Internal quotation marks omitted.) *In re Trevon C.*, 109 Conn. App. 782, 794, 952 A.2d 1280 (2008).

Pursuant to § 17a-112 (k), the statutory factors used to determine whether termination is in the child's best interest include: "(1) The timeliness, nature and extent of services offered . . . (2) whether the [d]epartment . . . has made reasonable efforts to reunite the family . . . (3) the terms of any applicable court order entered into . . . and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's

parents . . . and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future . . . and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child . . . or by the economic circumstances of the parent."

We conclude that the court, in granting the petition to terminate the respondent's parental rights, properly made its written findings in consideration of the factors delineated in § 17a-112 (k). The court carefully considered each factor and found, first, that the petitioner had consistently offered the respondent placement in substance abuse treatment programs and that she either (1) declined the offers repeatedly, at one point because she wanted to be home when her older son was released from prison, or (2) was discharged unsuccessfully from the programs she did enter. She also was offered supervised visits, transportation, clothes vouchers and eviction mediation. The court also found that the department had made reasonable efforts to reunify Tremaine with his parents, and that both parents had issues with substance abuse, inadequate housing and insufficient income. The court found that specific steps had been ordered[10] nearly two years earlier but that the

---

[10] The court ordered that the respondent keep all appointments and cooperate with the department, participate in counseling and make progress toward identified treatment goals, accept and cooperate with in-home support services referred to her by the department, submit to random drug testing, secure adequate housing and legal income, immediately advise the department of any changes in the composition of the household to ensure that the change does not compromise the health and safety of the child and to visit the child as often as the department permits. In documentation in support of the petition for termination of parental rights, the petitioner

respondent failed to comply with any of the steps and still lacked stable housing, gainful employment and a legal source of income.

Additionally, the court noted that the respondent "has only been a visiting resource to Tremaine" and that a plan was in place to transition him from his foster home to the home of a relative who was interested in adopting him. Regarding the age of the child, the court found that Tremaine was twenty-three months old. It found that the respondent's "newly obtained sobriety is laudable [but whether she] can sustain sobriety in the community is unknown." Finally, the court found that it was "not aware of any person, parent, agency or economic circumstance that has precluded either parent from maintaining a meaningful relationship with Tremaine." The court concluded that it was in Tremaine's best interest to terminate the parental rights of both parents.

The record amply supports the court's finding that termination was in the best interest of the child. Although the respondent maintains that there has not been a demonstration that allowing her to maintain her parental rights would have a detrimental effect on the best interest of Tremaine, the court found that the respondent was not in a position in which she could provide a sufficiently stable life for Tremaine. "We decide, not whether we would have drawn the same inferences or found the same facts, but whether the trial court could have reasonably done so." (Internal quotation marks omitted.) *In re Halle T.*, 96 Conn. App. 815, 841, 902 A.2d 670, cert. denied, 280 Conn. 924, 908 A.2d 1087 (2006). The court reasonably could have reached the conclusion that it did.

The respondent asserts that because she has always been "appropriate and loving and engaging with her

alleged that the respondent had not been in compliance with any of these steps.

son," termination was not in his best interest. Although Smith testified that the respondent was appropriate and affectionate with Tremaine during their visits, we reiterate that her visits were infrequent at best. Smith succinctly summarized the petitioner's rationale for seeking termination of the respondent's parental rights, stating: "[The respondent] had not been visiting with Tremaine, from April to May she only had two visits, she was not engaged in substance abuse treatment, she didn't have housing, she was not employed and did not have any income, so [the petitioner] needed to make a plan for this child's future." Regardless of whether the respondent was appropriate and affectionate with Tremaine during their sporadic visits, "[o]ur courts consistently have held that even when there is a finding of a bond between parent and child, it still may be in the child's best interest to terminate parental rights." *In re Rachel J.*, 97 Conn. App. 748, 761, 905 A.2d 1271, cert. denied, 280 Conn. 941, 912 A.2d 476 (2006).

Additionally, the respondent places emphasis on the fact that she has been clean and sober and has not failed a drug test since July, 2007. The court commended her for this but expressed concern about her ability to sustain sobriety in the community. When, as here, the record reveals that the court's ultimate conclusions are supported by clear and convincing evidence, "we will not reach an opposite conclusion on the basis of any one segment of the many factors considered in a termination proceeding . . . ." (Internal quotation marks omitted.) *In re Christine F.*, 6 Conn. App. 360, 370, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769, 770 (1986).[11]

---

[11] The respondent also suggests as an alternative to termination that instead guardianship of Tremaine could have been transferred to a relative. Again, we must state that it is not our function to retry the case but only to determine whether the court could have reached the conclusions that it did.

"Because of the psychological effects of prolonged termination proceedings on young children, time is of the essence in custody cases." (Internal quotation marks omitted.) *In re Anthony H.*, 104 Conn. App. 744, 767, 936 A.2d 638 (2007), cert. denied, 285 Conn. 920, 943 A.2d 1100 (2008). It therefore was not improper for the court to conclude that further protracting these proceedings would not be in Tremaine's best interest. Tremaine is in the custody of a relative who has expressed interest in adopting him, after having spent the entirety of his young life in the care of a foster family who was unable to adopt him, and the potential for further disruption of his life continues to exist as long as the respondent maintains her parental rights. See *In re Davonta V.*, 285 Conn. 483, 490, 940 A.2d 733 (2008). Accordingly, we conclude that it was not clearly erroneous for the court to have found that it was in the best interest of the child to terminate the parental rights of the respondent.

The judgment is affirmed.

In this opinion BEACH, J., concurred.

SCHALLER, J., dissenting. I respectfully disagree that the respondent mother was unable to benefit from reunification efforts and that terminating her parental rights is in the child's best interest.[1] The trial court's memorandum of decision with respect to the dispositional phase is grounded in the respondent's past conduct, relating more properly to the rehabilitation phase. The memorandum of decision lacks support for termination, as to either the grounds for termination as specified by General Statutes § 17a-112 (j) or as to the child's

---

[1] Although the respondent made notable progress toward rehabilitation, she did not accomplish all aspects of the required steps by the time of the trial. Although that phase of the proceeding is not beyond dispute, I choose to dissent with respect to the dispositional phase.

best interest. The respondent's past conduct is relevant only to define what the respondent was required to do pursuant to the specific steps ordered by the court, *Hon. Frederica S. Brenneman,* judge trial referee, at the time the child was found to be neglected. Although the respondent initially failed to respond to the services offered by the department of children and families (department) pursuant to those steps, after the petition to terminate her parental rights as to the child was served on her, the respondent recognized the need to fulfill the steps and took positive action, often independent of the department, to overcome her substance abuse. The uncontradicted evidence indicates that since the respondent entered an inpatient treatment facility in September, 2007, she has not abused illegal substances. At the conclusion of the trial, the respondent was living in the community, caring for a newborn child and keeping regular visits with the child who is the subject of the termination petition. The record provides no evidentiary basis for concluding that the respondent was unable to benefit from the services she received and that it is not foreseeable within a reasonable time, given her sobriety, that she can fulfill the remaining steps, stable housing and legal income, and assume a responsible position in the child's life. See General Statutes § 17a-112. Moreover, there is no nonspeculative evidence that demonstrates why it is in the child's best interest to terminate the respondent's parental rights now, rather than at some reasonably foreseeable time in the future, *if at all.*

General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition filed pursuant to this section if it finds by *clear and convincing* evidence that (1) the [d]epartment . . . has made reasonable efforts . . . to reunify the child with the parent . . . unless . . . the parent is *unable or unwilling* to benefit from reunification efforts

. . . ." (Emphasis added.) "The clear and convincing standard is met by evidence that induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *State* v. *Davis*, 229 Conn. 285, 294 n.9, 641 A.2d 370 (1994). An appellate court's review of the factual findings of the trial court is limited to determining whether the facts found are clearly erroneous. See Practice Book § 60-5; *Vernon* v. *Goff*, 107 Conn. App. 552, 557, 945 A.2d 1017, cert. denied, 289 Conn. 920, 958 A.2d 154 (2008). "A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made." *In re Samantha C.*, 268 Conn. 614, 627, 847 A.2d 883 (2004). On the basis of my review of the court's memorandum of decision and the evidence presented, I am convinced that the court's finding that the respondent is unable to benefit from reunification efforts is clearly erroneous.

An examination of the court's memorandum of decision with respect to disposition reveals inadequate findings in support of termination of the respondent's parental rights.[2] The court began by reciting briefly the respondent's history of participation in drug treatment programs and the department's services. The court then recited inconclusive facts concerning the child's adoption status and the child's age, then twenty-three months. Although the court praised the respondent's "newly obtained sobriety," it speculated that "[w]hether [the respondent] can sustain sobriety in the community is unknown." The court next repeated in conclusory

---

[2] Although the respondent father's situation was entirely different from the respondent mother's, the court dealt with both situations together, alternating facts and conclusions pertaining to both parents in the same section of the memorandum of decision.

form her lack of suitable housing, employment and income and her apparently suitable record of maintaining contact with the child.

*Without any factual findings to support the conclusion that the respondent was unable to benefit from reunification efforts or whether termination was in the child's best interest,* the court merely asserted its conclusory determination that the child's best interest would be served by termination. The court indicated that it "must consider the seven factors outlined in § 17a-112 (k)" but failed to explain how it did so. The court also failed to indicate whether any of its findings were made by clear and convincing evidence.

As I have stated elsewhere, "when . . . the factual findings implicate a [respondent's] constitutional rights and the credibility of witnesses is not the primary issue . . . a scrupulous examination of the record [should be undertaken] to ensure that the findings are supported by substantial evidence."[3] (Internal quotation marks omitted.) *In re Melody L.,* 290 Conn. 131, 176–77, 962 A.2d 81 (2009) (*Schaller, J.,* concurring). In this case, however, even the clearly erroneous standard of review reveals that the petitioner, the commissioner of children and families, failed to prove by clear and convincing evidence that the respondent was unable to benefit from reunification efforts,[4] and the court failed to support

[3] In this matter, the credibility of witnesses is not at issue and neither party challenges the underlying facts found by the court. The issue is whether those underlying facts support a finding that the respondent was unable to benefit from the substance abuse services she received.

[4] The relevant portion of § 17a-112 (j) (1) is written in the alternative, i.e., that the "parent is unable or unwilling . . . ." In its memorandum of decision, the court did not distinguish between unwilling and unable. I concede that the record supports a finding that the respondent was unwilling to work with the department, but that is not the end of the matter. My analysis focuses on the "unable . . . to benefit" language of the statute. I also observe that § 17-112 (j) (1) places the onus to provide services on the department; it does not require the respondent parent to accept services from the department exclusively. In this instance, the respondent relied on other agencies to help her obtain the treatment she needed. The petitioner

its termination decision with any supporting evidence, much less by clear and convincing evidence. To the contrary, the record demonstrates unmistakably that once the respondent put her mind to it, she demonstrated that she could, in fact, benefit from inpatient substance abuse treatment. Admittedly, it took some time for the respondent to come to grips with the consequences of her addiction, but once she did, she pursued a determined course to overcome it, without the benefit of services offered by the department. At the conclusion of evidence concerning the respondent, the record is clear that the respondent had refrained from using illegal drugs for approximately five months, was living with her cousin in the community and caring for her newborn child. There also was evidence that while the respondent was receiving inpatient substance abuse services, she was receiving counseling and attending programs designed to address other steps she needed to take. Compare *In re Vincent B.*, 73 Conn. App. 637, 645, 809 A.2d 1119 ("respondent's positive step in participating in a treatment program demonstrated a degree of rehabilitation in itself"), cert. denied, 262 Conn. 934, 815 A.2d 136 (2003).

Moreover, I conclude that to find that it is in the best interest of the child to terminate the respondent's parental rights at this time is based on sheer speculation. At the time of trial, the child had been living with a foster family since his birth. Because the foster family had decided not to adopt him, he was to be transferred to a relative preadoptive family, but the family had not yet met certain licensing requirements. It is mere speculation that the proposed adoptive family will become licensed and eventually adopt the child. The respondent, at the time, was visiting regularly with the child, and, by all accounts, her interaction with him

has not taken the position that it was improper for the respondent to obtain services by a means other than those the department provided or facilitated.

was appropriate. The petitioner presented no specific information about the child, except his date of birth and that he tested positive for cocaine when he was born. The petitioner provided no evidence as to why the respondent could not care for the child at some foreseeable time in the future, other than to speculate that she might not be able to care for two children younger than age two. It is noteworthy that Kelly Rogers, the court-appointed psychologist called by the petitioner, testified that he did not have enough information to advocate for termination.[5]

"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [respondent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Citation omitted; internal quotation marks omitted.) *In re Marvin M.*, 48 Conn. App. 563, 578, 711 A.2d 757, cert. denied, 245 Conn. 916, 719 A.2d 900 (1998). "The statute does not require [a parent] to prove precisely when she will be able to assume a responsible position in her child's life. Nor does it require her to prove that she will be able to assume full responsibility for her child, unaided by available support systems. It requires the court to find, by clear and convincing evidence, that the level of rehabilitation she has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life." (Internal quotation marks omitted.) *In re Eden F.*, 250 Conn. 674, 706, 741 A.2d 873, reargument denied, 251 Conn. 924, 742 A.2d 364 (1999).

---

[5] Rogers testified in part regarding his opinion as to whether the respondent should be given additional time to reunify with the child: "Though the information that you presented is potentially helpful to me, I don't feel that I have enough information about [the respondent's] progress and the program to definitively advocate for termination."

In this case, the respondent continues to make progress. She overcame her drug dependence and is taking care of a newborn child. She visits with the child who is the subject of this petition on a regular basis and has appropriate interaction with him. She and the newborn are living with the respondent's cousin. The respondent transferred the guardianship of her older children to other relatives. One could infer from such evidence that the respondent had a family support network. I conclude, therefore, that the petitioner has failed to prove by clear and convincing evidence that the respondent is unable to benefit from reunification efforts.

In view of my conclusion that the petitioner failed to prove by clear and convincing evidence that the respondent is unable to benefit from reunification efforts, I also must conclude that the department has not made *reasonable* efforts to reunify the respondent with the child. "The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. . . . [R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *In re Tabitha T.*, 51 Conn. App. 595, 600, 722 A.2d 1232 (1999).

As demonstrated by the testimony of Lakesha Smith, the department social worker assigned to the case, the department was aware of the success the respondent achieved during inpatient treatment for substance abuse. The department also knew that the respondent was taking good care of her newborn child and was interacting with the subject child appropriately. In 2006, when the respondent initially failed to visit the child weekly, the department reduced the amount of time the respondent could visit with the child to every other week. Once the department became aware of the respondent's success in drug treatment, it failed to

make the reasonable reunification effort of increasing the frequency of visits between the respondent and her child. Furthermore, Smith testified that it was not possible to find subsidized housing for the respondent as long as she was drug-dependent. Although the department knew that at the time of trial the respondent was sober, it failed to make further efforts to find subsidized housing for her.[6] Section 17a-112 (j) (1) requires that the department make reasonable efforts to reunify the child with the parent, unless the parent is unable to benefit from reunification. Given the respondent's progress in overcoming drug addiction and her ability to care for a newborn child and interact appropriately with the subject child, the court's finding that the department had made reasonable efforts to reunify the child with the parent was clearly erroneous. Without clear and convincing evidence that the department had made reasonable efforts to reunify the child with the respondent, the court was without authority to grant the petition to terminate the respondent's parental rights. See General Statutes § 17a-112 (j) (1).

For the foregoing reasons, I respectfully dissent.

---

[6] The evidence portion of the trial with respect to the respondent concluded on January 29, 2008. For reasons having to do with the respondent father, the court continued to hear evidence well into the spring of 2008. See *In re Tremaine C.*, 117 Conn. App. 521, 980 A.2d 317 (2009). Although the court continued to hear evidence on the petition to terminate the respondent father's parental rights, the petitioner never filed a motion to open the evidence with respect to the respondent mother to demonstrate that she had not maintained her sobriety.