******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# IN RE ZARIRAI S. ET AL.*
## (AC 47605)

Alvord, Clark and Westbrook, Js.

*Syllabus*

The respondent mother appealed from the judgments of the trial court terminating her parental rights with respect to her minor children. The mother claimed that the court improperly determined that she had failed to achieve a sufficient degree of rehabilitation pursuant to the applicable statute (§ 17a-112 (j) (3)). *Held*:

The trial court reasonably determined, on the basis of its subordinate factual findings and the reasonable inferences drawn therefrom, which were adequately supported by the evidence, that, pursuant to § 17a-112 (j) (3) (B) and (E), the respondent mother failed to achieve sufficient rehabilitation that would encourage the belief that, within a reasonable time, she could assume a responsible position in the children's lives.

The trial court did not improperly compare the parenting of the respondent mother with that of the foster parents in determining that the mother failed to achieve a reasonable degree of rehabilitation, the court's statements regarding the foster parents having been made in the context of its finding that the mother could not meet the children's needs.

The trial court applied the proper legal standard, namely, whether the petitioner, the Commissioner of Children and Families, proved by clear and convincing evidence that the respondent mother had failed to achieve a sufficient degree of rehabilitation pursuant to § 17a-112 (j) (3) (B) and (E), and it did not require the mother to "guarantee" her rehabilitation within a period of six months.

Argued October 10—officially released November 21, 2024**

*Procedural History*

Petitions by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor children, brought to the Superior

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

** November 21, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Court in the judicial district of Waterbury, Juvenile Matters, where the respondent Kenneth E. et al. were defaulted for failure to appear; thereafter, the respondent Juan R. M. consented to the termination of his parental rights; subsequently, the matter was tried to the court, *Wilkerson Brillant, J.*; judgments terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Affirmed.*

*Benjamin M. Wattenmaker*, assigned counsel, for the appellant (respondent mother).

*Lori Knuth*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Nisa Khan*, assistant attorney general, for the appellee (petitioner).

*Opinion*

WESTBROOK, J. The respondent mother, Crystal S., appeals from the judgments of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to her minor children, Z and L.[1] On appeal, the respondent claims that the court improperly determined that she had failed to achieve a sufficient degree of rehabilitation because (1) the court's determination was not supported by the evidence, (2) the court impermissibly compared the parenting of the respondent with that of the children's foster parents, and (3) the court failed to apply the proper legal standard by "add[ing] a requirement of a 'guarantee' that the [respondent]

---

[1] The parental rights of L's father, Juan R. M., were terminated by consent. The court, *Wilkerson Brillant, J.*, terminated the parental rights of Z's putative fathers, Kenneth E. and John Doe, after trial, at which they did not appear. The termination of the father's and the putative fathers' parental rights is not at issue on appeal. Accordingly, all references to the respondent are to the mother only.

Additionally, the respondent had two other children, but only Z and L are the subjects of this appeal. Accordingly, all references to the children are to Z and L only.

must be able to rehabilitate within six months." We affirm the judgments of the trial court.

The following facts, which the court found by clear and convincing evidence, and procedural history are relevant to the resolution of this appeal. Z was born in August, 2018, and L was born in August, 2021. The Department of Children and Families (department) first became involved with Z on September 8, 2020, when it received a report that the respondent had left Z with an inappropriate caregiver for more than one week, during which time the respondent had little contact with the child or the caregiver. On September 10, 2020, the petitioner, pursuant to General Statutes § 17a-101g, invoked a ninety-six hour hold on Z and placed her in the care and custody of the petitioner. On September 14, 2020, the petitioner filed a neglect petition and sought an order of temporary custody on Z's behalf, which the court, *Aaron, J.*, granted ex parte that same day. The court sustained the order of temporary custody on September 23, 2020. On March 9, 2021, the court adjudicated Z neglected and committed her to the care of the petitioner.

The court also ordered the respondent to follow specific steps for reunification with Z. The specific steps required, inter alia, that the respondent (1) keep all appointments set by or with the department; (2) participate in counseling and make progress toward treatment goals; (3) submit to substance abuse evaluations and follow recommendations for treatment; (4) submit to random drug testing; (5) not use illegal drugs or abuse alcohol or medicine; and (6) visit Z as often as the department permits.

In March, 2021, the respondent began treatment at the Wellmore Behavioral Health's Women and Children's Program (WCP) to address issues with mental health,

medication compliance, substance use, parenting concerns, and intimate partner violence. She has been diagnosed with post-traumatic stress disorder, single episode severe major depressive disorder, generalized anxiety disorder, bulimia nervosa, cannabis use disorder, and alcohol use disorder. She has experienced intimate partner violence during her relationship with L's father and during other prior relationships. She has also experienced childhood trauma, including physical abuse and sexual assault. In August, 2021, while at the WCP, the respondent gave birth to L. In October, November and December, 2021, the respondent tested positive for opiates, including codeine and/or morphine. As a result of the respondent's positive drug tests, failure to supervise L, and failure to comply with WCP rules, the WCP discharged her on December 30, 2021. On the same day, the petitioner filed a neglect petition and sought an order for temporary custody on behalf of L, which the court, *Hon. John Turner*, judge trial referee, granted ex parte that day.

After the WCP discharged the respondent, the department required her to participate in the Intensive Outpatient Program (IOP) at Wellmore Behavioral Health, which she refused to attend. The respondent told the department that she would instead attend mental health treatment at Community Mental Health Affiliates (CMHA), but she attended only one outpatient group meeting at CMHA in February, 2022. The respondent also refused to accept in-home support services to confirm medication compliance, and she refused to participate in random drug testing. On January 5, 2022, the court ordered the respondent to participate in a hair follicle test, and, on February 17, 2022, the test results returned positive for marijuana. In March, 2022, the respondent attended group therapy sessions at Intercommunity Healthcare's IOP. In June, 2022, she was successfully discharged from the IOP despite her failure

to attend all of the required sessions and her failure to participate in drug testing.

Due to concerns about COVID-19, the department offered the respondent virtual visits with her children in January and February, 2022. The respondent, however, was inconsistent with visitation as she cancelled or was late to several virtual visits. In-person visits resumed in February, 2022, and the department referred the respondent to the Family and Children's Aid Quality Parenting Center (QPC) for parental coaching before, during, and after visits. The respondent began attending QPC in July, 2022, but she was discharged in November, 2022, due to lack of engagement. The department thereafter offered the respondent visitation with the children at its office, but she declined visitation with the children between October 6, 2022, and December 29, 2022.

On December 7, 2022, the court, *Hon. John Turner*, judge trial referee, adjudicated L neglected and committed her to the care of the petitioner. The court also ordered the respondent to follow specific steps for reunification with L. The specific steps required, inter alia, that the respondent (1) keep all appointments set by or with the department; (2) participate in counseling and make progress toward treatment goals; (3) accept and cooperate with in-home services offered by the department; (4) submit to substance abuse evaluations and follow recommendations for treatment; (5) submit to random drug testing; (6) not use illegal drugs or abuse alcohol or medicine; (7) complete an appropriate domestic violence program; (8) visit L as often as the department permits; and (9) complete psychosocial evaluation recommendations.

The children's foster parents are their maternal grandfather and stepgrandmother, who have expressed a willingness to adopt them. Z has resided with them since March 25, 2022, and L has resided with them since

December 30, 2021. On May 3 and October 4, 2022, the court, *Torres*, *J.*, approved permanency plans calling for the termination of parental rights and adoption of Z and L. On March 1 and July 7, 2023, the petitioner filed petitions to terminate the respondent's parental rights as to Z and L.

On March 1, 2024, the court, *Wilkerson Brillant, J.*, issued a memorandum of decision on the termination of parental rights petitions. It found that the department, pursuant to General Statutes § 17a-112 (j) (1), made reasonable efforts to reunify the respondent with the children and that the respondent was unable or unwilling to benefit from reunification efforts. At the time of trial, the respondent had not fully complied with her specific steps to reunify with either of the children. The court also found that statutory grounds for termination of parental rights existed because the children had been adjudicated neglected and the respondent failed to rehabilitate pursuant to § 17a-112 (j) (3) (B) and also failed to rehabilitate given a prior termination of parental rights pursuant to § 17a-112 (j) (3) (E).[2] The court further found that termination of parental rights was in

---

[2] In the respondent's brief to this court, her statement of issues challenges the court's determination that she failed to rehabilitate pursuant to § 17a-112, but her arguments expressly discuss only the § 17a-112 (j) (3) (B) ground for termination of parental rights and fail to expressly address the § 17a-112 (j) (3) (E) ground. Generally, we dismiss an appeal as moot where the respondent fails to challenge separate and independent bases for the court's determination that the requirements of § 17a-112 were satisfied. See *In re Miracle C.*, 201 Conn. App. 598, 605, 243 A.3d 347 (2020) ("[b]ecause the respondent challenges on appeal only one of the two separate and independent bases for the court's determination that the requirements of § 17a-112 (j) (1) had been satisfied, this court can afford the respondent no relief").

In the present matter, both grounds for termination of parental rights require the petitioner to prove by clear and convincing evidence that the respondent failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. See General Statutes § 17a-112 (j) (3) (B) and (E). This is the finding that the respondent challenges on appeal, and,

the children's best interests. The court, therefore, termi-
nated the respondent's parental rights as to the children.
This appeal followed.[3] Additional facts will be set forth
as necessary.

Before discussing the respondent's claims on appeal,
we briefly set forth the standard of review and relevant
legal principles that govern our review. "Proceedings
to terminate parental rights are governed by . . . § 17a-
112. . . . Under § 17a-112, a hearing on a petition to
terminate parental rights consists of two phases: the
adjudicatory phase and the dispositional phase. During
the adjudicatory phase, the trial court must determine
whether one or more of the . . . grounds for termina-
tion of parental rights set forth in § 17a-112 [(j) (3)]
exists by clear and convincing evidence. . . . If the
trial court determines that a statutory ground for termi-
nation exists, then it proceeds to the dispositional
phase. During the dispositional phase, the trial court
must determine whether termination is in the best inter-
ests of the child. . . . The best interest determination
also must be supported by clear and convincing evi-
dence." (Internal quotation marks omitted.) *In re Niya
B.*, 223 Conn. App. 471, 476 n.5, 308 A.3d 604, cert.
denied, 348 Conn. 958, 310 A.3d 960 (2024).

I

The respondent first claims that the evidence does
not support the court's finding that the respondent
failed to "achieve such degree of personal rehabilitation
as would encourage the belief that within a reasonable
time, considering the age and needs of the child, such
parent could assume a responsible position in the life

therefore, we treat the respondent's challenge to the court's determination
that she failed to rehabilitate as a challenge to both § 17a-112 (j) (3) (B)
and (E).

[3] The attorney for the minor children has filed a statement, pursuant to
Practice Book § 79a-6 (c), adopting the brief of the petitioner.

of the child . . . .” General Statutes § 17a-112 (j) (3) (B); see also General Statutes § 17a-112 (j) (3) (E). Specifically, she argues that (1) the court made subordinate factual findings that are clearly erroneous, and (2) the evidence supports a finding that she did achieve sufficient rehabilitation. We are not persuaded.

“[The] standard of review of a trial court’s finding that a parent has failed to achieve sufficient rehabilitation . . . is one of evidentiary sufficiency, that is, whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court.” (Citation omitted; footnotes omitted; internal quotation marks omitted.) *In re Shane M.*, 318 Conn. 569, 587–88, 122 A.3d 1247 (2015).

“[W]e review the trial court’s subordinate factual findings for clear error.” (Internal quotation marks omitted.) *In re Corey C.*, 198 Conn. App. 41, 59, 232 A.3d 1237, cert. denied, 335 Conn. 930, 236 A.2d 217 (2020). “A [subordinate factual] finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made.” (Internal quotation marks omitted.) *In re November H.*, 202 Conn. App. 106, 123, 243 A.3d 839 (2020). “Where . . . some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court’s fact finding process, a new hearing is required.” (Internal quotation

marks omitted.) *In re Selena O.*, 104 Conn. App. 635, 645, 934 A.2d 860 (2007).

A

Before turning to the court's determination that the respondent has failed to rehabilitate, we address the respondent's challenges to the subordinate factual findings of the court. The respondent claims that the court erroneously found that she (1) "does not argue that she has sufficiently personally rehabilitated but has asked the court to consider giving her more time to achieve such a degree of personal rehabilitation," (2) "was not consistent with her mental health treatment at Footsteps [Counseling]," (3) provided "testimony [that], in the court's view, did not even adequately acknowledge the children's needs," (4) "only began limited engagement" with mental health services six months before trial, and (5) attended mental health treatment at CMHA four times. After reviewing each finding in turn, we conclude that the court's finding that the respondent attended treatment at CMHA four times is clearly erroneous. We further conclude that the error is harmless and, therefore, does not warrant a new trial. Additionally, assuming, without deciding, that the court's finding that the respondent began engaging with mental health services six months prior to trial is clearly erroneous, we conclude that the error is harmless and does not warrant a new trial. We conclude that the remainder of the challenged subordinate findings are not clearly erroneous.

First, the respondent argues that the court improperly found that she had not argued that she achieved sufficient personal rehabilitation. The respondent points to her trial counsel's closing argument, in which he stated that, "despite what the [petitioner] alleges, [the respondent] has achieved a sufficient degree of rehabilitation." The petitioner, on the other hand, directs us to the

respondent's testimony at the trial. On direct examination, the respondent agreed that she was "asking that the court deny the termination of parental rights petition so that [she] can have additional time to work toward unifying with both of the kids." On cross-examination, counsel for the minor children asked the respondent how much time she needed, and she replied: "I would think that maybe a month [or] three months because I do have the home . . . but, also, I would like to be given a grace period . . . . So, I would say three months and, if the court were to . . . give me leniency, [then] anywhere to half a year . . . ." Counsel for the minor children subsequently asked whether the respondent thought that three months would be "long enough to rehabilitate," and the respondent answered, "I do believe in myself." Although the court's statement that the respondent did not *argue* that she had rehabilitated was, strictly speaking, not accurate, the respondent's *testimony* indicated that she had not rehabilitated, notwithstanding her counsel's arguments. Cf. *In re Javonte B.*, 226 Conn. App. 651, 663 n.7, 318 A.3d 1095 (2024) (noting that "[s]tatements and arguments of counsel are not evidence" (internal quotation marks omitted)). Accordingly, we conclude that the challenged statement was not a clearly erroneous factual finding.

Second, the respondent argues that the court improperly found that she was inconsistent with her mental health treatment at Footsteps Counseling because her counselor, Stephanie Pizzuto, testified that the respondent was consistent with her mental health treatment. Pizzuto testified that she began treating the respondent on November 21, 2021, and that she worked with the respondent for one year. She testified that the respondent was consistent with her scheduled appointments until October, 2022, at which point the respondent stopped showing up to appointments and Pizzuto lost

contact with her. As a result of the respondent's failure to maintain appointments, Footsteps Counseling unsuccessfully discharged the respondent from the program in November, 2022. Additionally, on February 18, 2022, Pizzuto reported to the department that "[the respondent] is making slow progress toward her goals. . . . She was present for her scheduled appointments but has missed the past [two] weeks." (Internal quotation marks omitted.)

Although Pizzuto testified that the respondent had been consistent with her mental health treatment between November, 2021, and October, 2022, she also testified that the respondent stopped showing up in October, 2022, and additional evidence shows that she missed two weeks of appointments in February, 2022. Accordingly, after considering Pizzuto's testimony and report, the court reasonably could have found that the respondent was inconsistent with her mental health treatment at Footsteps Counseling, and, therefore, the court's finding to that effect is not clearly erroneous.

Third, the respondent argues that the court improperly found that that her testimony did not adequately acknowledge the children's needs. To support her argument, the respondent points to the following testimony:

"[The Respondent's Counsel]: And just moving on to visitation with the kids. What types of activities do you do with the children during visitation?

"[The Respondent]: . . . [T]he girls get agitated because it's just a room. They get bored, so I see the creative side in them, so I bring toys. . . . [T]hey love coloring, so I didn't bring the markers. [Z is] like 'why you didn't bring the markers?' She's very outspoken. I bring all types of things that I can think of, little beach balls, bubbles, safe things. And I also want them to, because learning in the WCP they didn't play with each

other, so I try to bring activities that they can both play with.

* * *

"[Counsel for the Minor Children]: How much additional time do you think you need?

"[The Respondent]: . . . I would like to be given a grace period because I do recognize that all the choices I made, I have a lot of like starts and beginning, but I've never given up because ultimately I was hoping for the well-being of the children, more or less, not for my selfish gain. What was best for them because I under[went] a lot through my parents and especially my own father. So, I would hope to give them a promising future."

The respondent argues that such testimony demonstrates concern for the children's needs during visits and a desire to provide the children with a promising future. The court, however, found the following: "The [respondent's] testimony, in the court's view, did not even adequately acknowledge the children's needs. Although the [respondent] testified about the steps she is taking to better herself, she did not testify that she had made any realizations or come to any conclusions regarding the needs of the children, or her ability to prioritize them." Indeed, the respondent testified about her desire to entertain the children during visits and to provide them with a "promising future," but she did not testify about the children's developmental, emotional, educational, or moral needs, such as therapy, permanency, and safety. Regarding a restraining order against L's father, the respondent stated only that "I will always be my own self advocate and keep myself safe." She did not testify about the restraining order as it relates to the safety of the children. Although the respondent argues that she acknowledged the children's needs, "[i]t is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the . . . weight to

be given specific testimony. . . . On appeal, we do not retry the facts . . . .'' (Internal quotation marks omitted.) *In re Niya B.*, supra, 223 Conn. App. 499. Thus, the court could have reasonably found that, taken as a whole, the respondent's testimony failed to adequately acknowledge the children's needs, and, therefore, this finding is not clearly erroneous.

Fourth, the respondent argues that the court improperly found that she "only began limited engagement with certain services—concerning intimate partner violence and mental health—in May and August of 2023, six months before the court held the [termination of parental rights] trial.'' In support of her claim, the respondent points to evidence that she began participating in counseling at the WCP in March, 2021, at Footsteps Counseling in November, 2021, and at Intercommunity Healthcare's IOP in February, 2022.[4] Even assuming that the

---

[4] We note that the challenged finding appears in a portion of the memorandum of decision in which the court addressed the respondent's claim that she would be able to rehabilitate herself within three to six months. In rejecting that contention, the court noted that, notwithstanding the respondent's recent participation in mental health and intimate partner violence services with CMHA and McCall Behavioral Health beginning in May and August, 2023, respectively, both providers were of the opinion that the respondent needed substantial additional treatment. The court found that, "based on the evidence of the [respondent's] need for further engagement with counseling services, as stated by the professionals she engaged with at McCall Behavioral Health and CMHA, the court cannot assume, based on the [respondent's] representation, that permitting her six additional months to adequately rehabilitate will have a sufficient result.'' Elsewhere in the memorandum of decision, the court expressly found that the respondent had participated in services with other providers at various points from 2021 through 2023, but that her engagement with such services was inconsistent. Specifically, the court found that the respondent was discharged from the WCP in 2021, refused to attend the IOP at Wellmore Behavioral Health in 2022, failed to participate in all required sessions and drug tests at Intercommunity Healthcare's IOP in 2022, stopped attending counseling at Footsteps Counseling in 2022, and inconsistently attended services at Safe Haven in 2023. Thus, read in context, it appears that the court's finding that the respondent "only began limited engagement with certain services . . . in May and August of 2023,'' was not intended as a finding that those were the only services that the respondent ever engaged

challenged statement amounts to a clearly erroneous finding, we disagree with the respondent's contention that it was harmful error.

Our review of the court's memorandum of decision indicates that the court's determination that the respondent had failed to rehabilitate did not rise or fall on the premise that the respondent only recently began engaging in services. Rather, the court's analysis relied heavily on the respondent's long-term inability to provide stability and support for her children, her ongoing inconsistency in engaging in treatment across multiple providers, and her providers' testimony that she "requires further counseling and needs at least eight more months of treatment." The court stated that "a sufficient degree of personal rehabilitation is generally characterized by factors like a consistent track record with respect to engagement with services offered, satisfaction, or at least attempted satisfaction, of specific steps, the completion of applicable programs, and the endorsement of a professional who has worked with the individual," none of which the court found applicable to the respondent. The court further stated that its determination that the respondent failed to achieve sufficient rehabilitation "is especially true given that the evidence demonstrates that the [respondent] engages with and attends treatment inconsistently, that she has no clear treatment path, and that the professionals she is engaged with have recommended further counseling and higher levels of care." Because we conclude that any error with respect to the court's finding that the respondent began engaging with mental health services six months prior to trial is harmless considering the respondent's history of inconsistent and unsuccessful treatment, a new trial is not warranted. See *In re Leilah*

in but, rather, was meant to explain why the court was not convinced that three to six more months in treatment would be adequate for the respondent to achieve sufficient rehabilitation.

*W.*, 166 Conn. App. 48, 70, 141 A.3d 1000 (2016) (new trial was not warranted where error regarding factual finding appeared harmless to determination taken as whole).

Lastly, the respondent argues that the court improperly found that she attended mental health treatment at CMHA four times. The petitioner does not dispute that this finding is erroneous as she concedes that "[t]he record is not clear as to how many individual counseling sessions [Helen] St. Germain [a clinician at CMHA] had with [the respondent] at the time of trial."[5] Rather, the petitioner argues that such error is harmless because the court's concern was that, at the time of trial, the respondent needed at least eight more months of mental health treatment to reach her goals. We agree with the petitioner because, as previously discussed, the court's determination that the respondent had failed to rehabilitate relied heavily on the inconsistency of the respondent's treatment as well as her need for additional treatment, both of which are supported by the evidence. Thus, because we conclude that the court's finding that the respondent attended treatment at CMHA four times,

---

[5] At trial, St. Germain testified about her work with the respondent in relevant part:

"[The Petitioner's Counsel]: So, you have been seeing her since about May, correct?

"[St. Germain]: I have been seeing [her] since May for group treatment and . . . the . . . end of August . . . is when we began really doing individual work. So, it's only been a couple of months.

"[The Petitioner's Counsel]: So, it's really only been while you've seen her in groups for about seven months, individually would you say it's been about three or four?

"[St. Germain]: Yes.

\* \* \*

"[Counsel for the Minor Children]: So, how many individual sessions have you had with the [respondent]?

"[St. Germain]: I cannot say exactly how many, but since September it's been either every week or every other week that I met with her. May[be] a brief lapse here and there because I was on vacation or if there's a holiday."

even if erroneous, is harmless error, a new trial is not warranted.

B

We now turn to the respondent's claim that the evidence does not support the court's determination that she failed to achieve sufficient personal rehabilitation. The respondent argues that she had rehabilitated because she was successfully discharged from the Wellmore Behavioral Health Supportive Housing Program, she obtained housing and employment, and she had no criminal involvement while this matter was pending. We are not persuaded.

"Personal rehabilitation as used in [§ 17a-112] refers to the restoration of a parent to [her] former constructive and useful role as a parent. . . . [I]n assessing rehabilitation, the critical issue is not whether the parent has improved [her] ability to manage [her] own life, but rather whether [she] has gained the ability to care for the particular needs of the child at issue." (Internal quotation marks omitted.) *In re Eric M.*, 217 Conn. App. 809, 829, 290 A.3d 411, cert. denied, 346 Conn. 921, 291 A.3d 1040 (2023). "An inquiry regarding personal rehabilitation requires us to obtain a historical perspective of the respondent's child-caring and parenting abilities." (Internal quotation marks omitted.) *In re Tremaine C.*, 117 Conn. App. 590, 597, 980 A.2d 330, cert. denied, 294 Conn. 920, 984 A.2d 69 (2009). "Although the standard is not full rehabilitation, the parent must show more than any rehabilitation. . . . Successful completion of the petitioner's expressly articulated expectations is not sufficient to defeat the petitioner's claim that the parent has not achieved sufficient rehabilitation. . . . [E]ven if a parent has made successful strides in her ability to manage her life and may have achieved a level of stability within her limitations, such

improvements, although commendable, are not dispositive on the issue of whether, within a reasonable period of time, she could assume a responsible position in the life of her children." (Citations omitted; internal quotation marks omitted.) *In re Alejandro L.*, 91 Conn. App. 248, 260, 881 A.2d 450 (2005).

Here, our careful review of the record and the court's factual findings reveals that the evidence credited by the court reasonably supports its determination that the respondent had failed to achieve sufficient rehabilitation to be able to parent the children within a reasonable time. The respondent has not played any role in caring for or raising the children, as Z and L have been in the petitioner's custody since 2020 and 2021, respectively. The respondent also failed to comply with the court's specific steps for reunification with the children. Notably, the court ordered her to visit with the children as often as permitted, but the respondent was inconsistent with visitation. Between January and February, 2022, the respondent cancelled or was late to several virtual visits. The respondent then began attending QPC sessions in July, 2022, but she was discharged in November, 2022, due to lack of engagement. The department thereafter offered the respondent visitation with the children at its office, but she declined visitation with the children between October 6, 2022, and December 29, 2022. As discussed in part I A of this opinion, the respondent's testimony failed to even adequately acknowledge the children's needs for stability and safety.

The court's specific steps also ordered the respondent not to use illegal drugs and to comply with drug tests, but she failed to comply with these steps. In October, November and December, 2021, while attending the WCP, the respondent tested positive for opioids. In January, 2022, she refused to engage in random drug testing, so the court ordered her to participate

in a hair follicle test, which returned positive for marijuana in February, 2022. The respondent thereafter attended the IOP at Intercommunity Healthcare where she refused to engage in drug testing. In April, 2023, she admitted to the department that she was using marijuana while having an expired medical marijuana card. In July, 2023, while attending intake at McCall Behavioral Health, the respondent admitted to smoking large amounts of marijuana and she tested positive for marijuana in September, 2023.

Furthermore, the department offered the respondent services relating to, inter alia, intimate partner violence, housing, parenting, and substance abuse, since first becoming involved with Z, but she has engaged with such services inconsistently. She was discharged from the WCP without completing the program because she violated its rules by, inter alia, testing positive for drugs, failing to supervise L, and leaving the facilities without permission. The respondent's providers, including St. Germain, reported that the respondent needs further counseling and at least eight more months of treatment. Ana Aldana, who provided counseling to the respondent at McCall Behavioral Health, additionally reported that the respondent's attendance was inconsistent and recommended that she engage in a higher level of care. The respondent did not present any evidence that any of the professionals she engaged with support her position. Moreover, the respondent requested that the court give her three to six additional months to rehabilitate to an appropriate level, which indicates that she recognized her failure to rehabilitate sufficiently at the time of trial. In considering this request in light of her providers' testimony, the court found that a realistic possibility existed that she would fail to sufficiently rehabilitate even if given an additional six months.

The evidence reasonably supports the trial court's findings that the respondent has not maintained a present and stable position in the children's lives, she has

failed to consistently and meaningfully participate in services provided by the department, she requires further mental health treatment to reach her goals, and she has failed to even acknowledge her children's needs for permanency and stability. Although the respondent encourages us to focus on the positive aspects of her behavior and to ignore the negatives, "we will not scrutinize the record to look for reasons supporting a different conclusion than that reached by the trial court." *In re Shane M.*, supra, 318 Conn. 593. We simply cannot find fault with the court's reasoning that, "[a]lthough the court does not doubt that the [respondent] loves the children, she has been given chances before and many years have passed. She has failed to even meet the court-ordered specific steps for reunification with the children, which weighs heavily against her." Thus, we conclude that the court reasonably determined, on the basis of its subordinate factual findings and the reasonable inferences drawn therefrom, which were adequately supported by the evidence, that the respondent failed to achieve sufficient rehabilitation that would encourage the belief that, within a reasonable time, she could assume a responsible position in the children's lives.

## II

The respondent next claims that the trial court improperly determined that she had failed to rehabilitate because the court compared the parenting of the respondent with that of the foster parents. We disagree.

"The interpretation of a trial court's judgment presents a question of law over which our review is plenary. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . Effect must be given to that which is clearly implied as well

as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole. . . . If there is ambiguity in a court's memorandum of decision, we look to the articulations that the court provides." (Internal quotation marks omitted.) *In re James O.*, 322 Conn. 636, 649, 142 A.3d 1147 (2016).

"When the petitioner seeks to terminate a parent's parental rights on the ground that the parent has failed to rehabilitate, [t]he trial court is required, pursuant to § 17a-112, to analyze the [parent's] rehabilitative status *as it relates to the needs of the particular child*, and further . . . such rehabilitation must be foreseeable within a reasonable time. . . . Therefore, the trial court must first determine the needs of the particular child before determining whether a parent has achieved a sufficient rehabilitative status to meet those needs." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 650.

"Turning to the ability of a trial court to consider evidence of the abilities of a foster parent when adjudicating a petition to terminate parental rights, [our Supreme Court has] recognized that such determinations are particularly vulnerable to the risk that judges or social workers will be tempted, consciously or unconsciously, to compare unfavorably the material advantages of the child's natural parents with those of prospective adoptive parents and therefore to reach a result based on such comparisons rather than on the statutory criteria." (Internal quotation marks omitted.) Id. "It is . . . essential, in considering a petition to terminate parental rights, to sever completely the issues of whether termination is statutorily warranted and whether a proposed adoption is desirable. Although petitions for termination are presumably seldom brought unless prospective adoptive parents are available, there still must be a two-step process to determine,

first, the threshold question of whether cause for termination . . . has been proved. . . . Accordingly, we have held that [o]nly if a ground for termination exists may the suitability and circumstances of adoptive parents, in an appropriate proceeding, be considered." (Citations omitted; internal quotation marks omitted.) Id., 650–51; see also *In re Baby Girl B.*, 224 Conn. 263, 275, 618 A.2d 1 (1992).

"We do not permit foster or preadoptive parents to intervene in termination proceedings because to do so would permit them to shape the case in such a way as to introduce an impermissible ingredient into the termination proceedings. . . . We have never held, however, that a foster parent may not testify during the adjudicative phase of a termination proceeding or that a trial court may not consider evidence that arises within the context of a foster placement that is relevant to one of the statutory grounds raised for termination of parental rights." (Citation omitted; internal quotation marks omitted.) *In re James O.*, supra, 322 Conn. 651; see also *In re Anthony H.*, 104 Conn. App. 744, 752, 936 A.2d 638 (2007) (trial court noted that "[the child] requires a substantial amount of structure, which his prior therapeutic foster homes were able to provide" within context of specific needs of child), cert. denied, 285 Conn. 920, 943 A.2d 1100 (2008); *In re Shyliesh H.*, 56 Conn. App. 167, 171–72, 743 A.2d 165 (1999) (child's interactions with foster mother, in contrast to interactions with other adults, were evidence of psychiatric condition relevant to specific needs of child).

"We must determine, therefore, whether the trial court properly considered evidence of the children's foster placement as relevant to an aspect of an adjudicatory ground for termination, or rather, as the respondent contends, it improperly reasoned that termination was warranted" because the foster parents are better or

preferable parents when compared with the respondent. *In re James O.*, supra, 322 Conn. 652.

*In re James O.*, supra, 322 Conn. 636, is analogous to the present case. In that case, the trial court, in determining that the mother had failed to rehabilitate, stated: "More important than the disclosures, however, is the clear and convincing evidence that the children have made extraordinary progress while living with [the foster mother], in an environment that is calm and understanding of the children's needs. . . . As the children's progress, relationship and work with [the foster mother] makes clear, the process of healing and recovery must also occur in a home environment which the children have come to learn is safe and caring. Given [the foster mother's] training and participation in therapy sessions, it is clear that this process cannot be limited to the one hour per week session that a child has, even with a trust[ed] therapist. In contrast, [the mother] is volatile and prone to violence, unable to set appropriate limits, unwilling to talk with the children's therapists and, therefore, unable to help them use coping skills to manage their anxiety and ultimately, unwilling to believe the children's statements regarding the trauma. In short, [the mother] has none of the qualities [that] the children have required to stabilize and to continue to heal from the traumas they experienced while in their parents' care." (Internal quotation marks omitted.) Id., 653–54. Our Supreme Court found that the court had discussed the foster mother in light of the specific needs of the children. Id., 655. It, therefore, held that, "because the trial court found that the [mother] had none of the qualities necessary to meet her children's needs . . . the court did not improperly compare the abilities of the [mother] and [foster mother] in making its finding during the adjudicatory phase that the [mother] failed to achieve a reasonable degree of rehabilitation." Id., 657.

In the present case, the court made two findings that are relevant to this appeal. First, the court stated: "The [respondent] is unable to meet the developmental, emotional, educational, and moral needs of the children. This is especially true given the children's need for permanency at their ages, as [Z] is five years old and [L] is two years old, and their attachments to their shared foster family, which provides them with love and stability as well as familiarity as their maternal grandparents. Further, [Z] has been in the care of the [petitioner] since before her second birthday and has lived with this foster family for almost two years. Similarly, [L] has been in the care of the [petitioner] since before her first birthday and has lived with this foster family for over two years." Second, regarding the respondent's request for six additional months to rehabilitate, the court stated: "Additionally, apart from the likelihood that the [respondent] may sufficiently rehabilitate if given the time she requested, the lack of any guarantee that such rehabilitation will occur weighs heavily here because the children require permanence in their lives. The children are presently benefitting from a living situation that provides them with stability, care, nurture, and love. Considering the young age of the children, such a positive living situation is absolutely integral to their healthy development. If the court was to grant the [respondent's] request, the children's custody status will continue to lack permanence when that is exactly what they need at this stage."

After considering the challenged portions of the court's memorandum of decision within the context of its overall analysis, we conclude that the court's adjudicative findings are appropriately centered on the specific needs of the children, a necessary consideration when determining whether a respondent has failed to rehabilitate. Similar to *In re James O.*, the court referenced the foster placement, but it did so in

light of the specific needs of the children. The court noted that the children currently reside with their foster parents, where they benefit from, inter alia, "a living situation that provides them with stability, care, nurture, and love." By discussing the children's foster placement, the court recognized that, whoever the children's caregiver is, that individual must provide the children with permanence. See *In re James O.*, supra, 322 Conn. 654–55 (trial court properly discussed foster parent's attributes for purpose of determining that "whoever the children's caregiver is, he or she necessarily must play an important role in helping the children continue to address and heal from their trauma"). Moreover, unlike *In re James O.*, the court in the present matter did not use any comparative language, such as "in contrast," to describe differences between the respondent and the foster parents. See id., 653. Rather, the court merely sought to describe the kind of environment a caregiver must be able to provide for the children.

After the court determined the children's specific needs, it compared those needs with the abilities of the respondent and found that "the [respondent's] personal history and testimony indicate that, while she may be making progress in addressing the issues that affect her individual development and safety, she is still not able to fully grasp the importance of assuming responsibility for the safety and developmental needs of the children. . . . The [respondent's] testimony, in the court's view, did not even adequately acknowledge the children's needs. Although the [respondent] testified about the steps she is taking to better herself, she did not testify that she had made any realizations or come to any conclusions regarding the needs of the children, or her ability to prioritize them." Thus, as in *In re James O.*, the court found that the respondent did not have the minimum ability to meet her children's particular needs,

as she failed to even acknowledge those needs. See *In re James O.*, supra, 322 Conn. 656–57. "While we are sensitive to the risks of a court comparing the abilities of a natural parent who can meet the basic needs of her children with the abilities of a foster parent who is more capable of meeting those needs and then making an adjudicatory determination based on who can *better* meet the needs of the particular children, those risks do not materialize when a court has found that a respondent has failed to achieve *any* level of rehabilitation and has *none* of the qualities necessary to meet the needs of the particular children." (Emphasis in original.) Id., 657.

In sum, the court considered several factors, one of which was the context of the children's foster placement, in finding that the children need a caregiver who provides permanency in their lives. The court thereafter found that the respondent "did not even adequately acknowledge the children's needs." Because the court's statements regarding the foster placements were made in the context of its finding that the respondent could not meet the children's needs, we conclude that the court did not improperly compare the parenting of the respondent and the foster parents in making its finding during the adjudicatory phase that the respondent failed to achieve a reasonable degree of rehabilitation.

### III

Lastly, the respondent claims that the trial court applied an improper legal standard in reaching its conclusion that the respondent failed to achieve a sufficient degree of rehabilitation because it required her to guarantee rehabilitation within six months. We conclude that the court did not require the respondent to guarantee her rehabilitation, and, therefore, we reject the respondent's claim.

"Whether the trial court applied the proper legal standard is subject to plenary review on appeal." (Internal quotation marks omitted.) *In re Eric M.*, supra, 217 Conn. App. 836. As previously stated, "judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *In re Fayth C.*, 220 Conn. App. 315, 320, 297 A.3d 601, cert. denied, 347 Conn. 907, 298 A.3d 275 (2023).

Section 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition [to terminate parental rights] . . . if it finds by clear and convincing evidence that . . . (3) . . . (B) the child . . . has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." Section 17a-112 "requires the court to find, by clear and convincing evidence, that the level of rehabilitation [he or she] has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date [he or she] can assume a responsible position in [his or her] child's life."[6] (Internal quotation

---

[6] As previously noted in footnote 2 of this opinion, the respondent challenges the court's determination that she failed to rehabilitate pursuant to § 17a-112 (j) (3) (B) and (E). General Statutes § 17a-112 (j) (3) (E) provides grounds for termination of parental rights where "the parent of a child under the age of seven years who is neglected, abused or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time,

marks omitted.) *In re November H.*, supra, 202 Conn. App. 122.

Here, the respondent argues that the court required her to guarantee her ability to rehabilitate within six months. In support of her argument, she points to two portions of the court's memorandum of decision. The court first stated that, "apart from the likelihood that the [respondent] may sufficiently rehabilitate if given the time she requested, the lack of any guarantee that such rehabilitation will occur weighs heavily here because the children require permanence in their lives." It also stated that the evidence "leaves the court with no guarantee that giving the [respondent] six more months will be in the children's best interests." Although the court noted that the respondent could not "guarantee" her rehabilitation, the memorandum of decision, taken as a whole, demonstrates that the court did not require

considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the [petitioner] . . . ."

"The language of § 17a-112 (j) (3) (E) is very similar to [§ 17a-112 (j) (3) (B)] in that both § 17a-112 (j) (3) (B) and § 17a-112 (j) (3) (E) provide grounds for termination of parental rights based on the failure to rehabilitate. The notable differences between the two are: (1) § 17a-112 (j) (3) (B) includes a specific steps requirement, whereas § 17a-112 (j) (3) (E) does not; (2) § 17a-112 (j) (3) (B) does not include any language about whether the parent is 'unable or unwilling' to be rehabilitated, whereas § 17a-112 (j) (3) (E) does; and (3) § 17a-112 (j) (3) (B) refers to a prior finding of neglect for the same child at issue in the termination proceeding, whereas § 17a-112 (j) (3) (E) refers to a prior termination of parental rights with respect to 'another child . . . .' The statute as a whole therefore provides more procedural protection—in the form of specific steps—to parents who are involved in their first termination proceeding, rather than their second or subsequent proceeding, when faced with a claim of failure to rehabilitate." (Emphasis omitted.) *In re Elvin G.*, 310 Conn. 485, 523, 78 A.3d 797 (2013) (*Zarella, J.*, dissenting).

Here, the respondent challenges the legal standard the court applied in reaching its determination that she failed to achieve a sufficient degree of personal rehabilitation, which goes to both § 17a-112 (j) (3) (B) and (E).

the respondent to prove such guarantee and, therefore, did not apply an improper standard.

Regarding the respondent's rehabilitation at the time of trial, the court found that she has been given years to rehabilitate but has failed to consistently engage with services offered by the department or even meet the court-ordered specific steps for reunification with the children. Accordingly, the court determined that, "on the basis of the credible testimony and documentary evidence presented, and pursuant to the requirements of § 17a-112 (j) (3) (B) (i), the petitioner has met [her] burden of proof by clear and convincing evidence that the [respondent] has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and needs of the children, she could assume a responsible position in their lives." The respondent, apparently recognizing that she had failed to rehabilitate, requested the court to provide her three to six additional months to rehabilitate to a sufficient degree. Regarding this request, the court found that, "based on the evidence of the [respondent's] need for further engagement with counseling services . . . the court cannot assume based on the [respondent's] representation that permitting her six additional months to adequately rehabilitate will have a sufficient result."

After considering the challenged portions of the court's memorandum of decision within the context of its overall analysis, we conclude that the court applied the proper standard, i.e., whether the petitioner proved by clear and convincing evidence that the respondent had failed to achieve such degree of personal rehabilitation to encourage the belief that she would assume a responsible position in her children's lives within a reasonable time. Although the court noted that the respondent could not *guarantee* rehabilitation within six months, its analysis clearly demonstrates that it did

not require her to prove such guarantee. Because the court found that the petitioner proved by clear and convincing evidence that the respondent had failed to rehabilitate sufficiently and was not likely to rehabilitate sufficiently if given six additional months, the court determined that grounds exist for termination of the respondent's parental rights pursuant to § 17a-112 (j) (3) (B) and (E). Accordingly, we conclude that the court applied the proper standard for determining whether the respondent had achieved a sufficient degree of rehabilitation.

The judgments are affirmed.

In this opinion the other judges concurred.